Certiorari Denied, March 8, 2010, No. 32,215

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-032

Filing Date:  January 7, 2010

Docket No. 27,393

STATE OF NEW MEXICO,

 Plaintiff-Appellant,

v.

FERNANDO GALLEGOS, JR.,

 Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
John M. Paternoster, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
S. Erin Brunson, Assistant Appellate Defender
Santa Fe, NM

for Appellee

OPINION

KENNEDY, Judge.

{1} The district court dismissed this case, having found a speedy trial violation.  The facts include both a failure of the State to pursue a timely trial date and some problems setting the case due to judicial retirements, excusals, and appointments.  We see as a fundamental principle the State's affirmative duty to bring a defendant to trial.  *State v.*

*Maddox*, 2008-NMSC-062, ¶ 26, 145 N.M. 242, 195 P.3d 1254. Because the amount of time this case was pending is presumptively prejudicial to Defendant's Sixth Amendment right to a speedy trial, it triggers a process in which we balance the factors from *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine whether a speedy trial violation occurred. We follow using the recent guidance provided us by the New Mexico Supreme Court in *State v. Garza*, 2009-NMSC-038, ¶¶ 47, 49, 146 N.M 499, 212 P.3d 387, in which the presumptive prejudice of delay alone acts as no more than a trigger to analysis of actual prejudice to the defendant. In *Garza*, our Supreme Court makes it clear that the defendant must show substantial and particularized prejudice of a substantial nature and degree unless the other *Barker* factors weigh heavily in his favor. Defendant's claims of prejudice fall short under *Garza* primarily because he was out of custody and showed few facts supporting his claim of personal harm and anxiety that we would recognize as compelling. Second, he did not demonstrate prejudice to his ability to defend the case. *Id.* ¶¶ 35, 36. Ultimately, because adherence to *Garza* compels it, we conclude that Defendant's showing of actual prejudice is insufficient under *Garza* to justify dismissal of the case. We therefore reverse the district court, and remand the case for trial.

## BACKGROUND

**{2}** Defendant was arrested on September 2, 2005, and charged in magistrate court for possession of a controlled substance and other offenses. This was to be a simple three-witness case involving two New Mexico State Police agents and a chemist to identify the controlled substance.

**{3}** On September 19, 2005, the charges in the magistrate court were dismissed pending further investigation, and Defendant was released. The State then indicted Defendant in district court on October 12, 2005, on charges including trafficking of a controlled substance. He was arraigned before Judge Nelson on October 26, 2005. The State was aware that the six-month rule would expire on April 26, 2006. Defendant had already demanded a speedy trial, and the court set the case for trial on April 10, 2006. Thereafter, Judge Nelson retired, and the case was reassigned to Judge Sanchez on February 1, 2006. Defendant excused Judge Sanchez from hearing the case, and three days later, on February 10, 2006, the case was reassigned to Division I, which was vacant owing to Judge Nelson's retirement. That position was not filled until April 21, 2006, with the swearing-in of Judge Paternoster.

**{4}** On April 24, 2006, two days shy of the six-month deadline, the State filed a petition with the Supreme Court to extend the trial deadline a full six months until October 26, 2006. Defendant objected. On April 27, 2006, as a result of obtaining the result of the drug analysis for the first time earlier in April, the State filed an amended notice of intent to call witnesses, and directly named, for the first time, the specific DPS forensic drug analyst it intended to call at trial. The Supreme Court granted the extension on May 5, 2006, extending the trial deadline to October 26, 2006. The State filed a request for trial on May 18, 2006, noting the deadline five months hence. On September 1, following an August pretrial hearing in which no pending motions were mentioned, Defendant moved to dismiss the case for violation of his right to a speedy trial. The trial court heard the motion on September 8, 2006. The State then obtained another extension of the trial deadline to

December 26, 2006.

**{5}** On December 27, 2006, the district court dismissed the charges against Defendant on the basis of a speedy trial violation. The State appeals.

**DISCUSSION**

**A.    Standard and Method of Review**

**{6}** In order to decide the extent to which a defendant's Sixth Amendment right to a speedy trial was violated, our courts undertake a two-part evaluation. First, although a finding of presumptive prejudice is not absolutely required, we determine whether the total period of time the case was pending was presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶ 49; *see Salandre v. State*, 111 N.M. 422, 425, 806 P.2d 562, 565 (1991). If so, that determination acts to trigger an evaluation of the factors laid out in *Barker* to determine the extent of prejudice and any applicable remedy. *Garza*, 2009-NMSC-038, ¶¶ 23, 49. We give deference to the district court's fact finding, while weighing and balancing the *Barker* factors de novo. *Maddox*, 2008-NMSC-062, ¶ 8.

**B.    Presumptively Prejudicial Delay**

**{7}** It is primarily the responsibility of the State to bring a case to trial within a reasonable period of time. *State v. Marquez*, 2001-NMCA-062, ¶ 8, 130 N.M. 651, 29 P.3d 1052; *Barker*, 407 U.S. at 527 ("A defendant has no duty to bring himself to trial; the [s]tate has that duty as well as the duty of insuring that the trial is consistent with due process." (footnote omitted)). Our State Supreme Court endorsed these principles in *Maddox*, 2008-NMSC-062, ¶ 26.

**{8}** The passage of time from October 12, 2005, when Defendant was indicted, through December 27, 2006, when the district court dismissed his case, comprises a period of approximately fourteen months. In that time, one judge retired, another was designated and then excused, and all parties waited for the appointment of a third. Meanwhile, the State was unable to go to trial at all for six months, until April 2006, as it did not have its drug analysis evidence until then, and no evidence appears in the record that the State attempted to hasten the lab results. The case languished until it was eventually dismissed.

**{9}** All parties agree this is a simple case. Three witnesses would have testified, including two police officers and a chemist purporting to identify the drug as being one prohibited by law. A fifteen-month delay in a simple case like this, counting from arrest, constitutes a delay that is beyond question presumptively prejudicial to Defendant's Sixth Amendment rights. *See Salandre*, 111 N.M. at 428, 806 P.2d at 568 (holding that a nine-month delay may be considered presumptively prejudicial); *Garza*, 2009-NMSC-038, ¶¶ 23, 47 (applying the guidelines in use at the time the district court decided the case; nevertheless holding that under the new standards, a twelve-month delay in a simple case is presumptively prejudicial).

3

**{10}** When this initial presumption becomes operative, *Work v. State*, 111 N.M. 145, 147, 803 P.2d 234, 236 (1990), formerly required that "the burden of persuasion [then] rests with the state to demonstrate that, on balance, the defendant's speedy trial right was not violated." (Internal quotation marks and citation omitted.) Following the recent holding in *Garza*, the presumption of prejudice serves only to trigger the *Barker* analysis. *Garza*, 2009-NMSC-038, ¶ 49. Under *Garza*, it is only when Defendant demonstrates actual prejudice that the State must carry "its burden of persuasion on the ultimate question of whether the defendant's right to a speedy trial has been violated." *Id.* ¶ 22. The amount of time itself, though presumptively prejudicial, does not carry forward into the analysis as a factor which in and of itself could be sufficient to find a violation of the right, but rather as one of the factors to consider in the whole analysis. *Id.* ¶ 23.

## C.    Findings of the District Court

**{11}** The district court, in its order dismissing the case, considered the factors and found that "all four *Barker* . . . factors weigh in favor of . . . Defendant." The court found that Defendant made "timely and repetitive assertions" of his right to a speedy trial, a finding we discuss below. The order also notes that the district court's findings were "further reflected" in a letter from the court to counsel for both sides, dated November 29, 2006. In that letter, the district court found that the State did not adequately justify the delay. It stated that

> [t]he overlap of the State's activities involving a speedy recharge of [D]efendant after the dismissal for 'further investigation,' coupled with the delay in obtaining the drug analysis results, coupled with the State's failure to seek an immediate replacement judge to hear the case, linked finally to the State's failure to self impose a close deadline on a Supreme Court extension add up, in my mind to a delay that cannot be justifiably explained away, in contravention of [D]efendant's right to a speedy trial.

The court therefore concluded that the initial dismissal for "further investigation" was unjustified, that the State did not proceed with due diligence when the case languished without a judge, and that the State prejudiced Defendant's rights further by requesting a second six-month extension with "knowing indifference" to Defendant's rights.

**{12}** The State contends that the district court focused only on the State's "actions or inactions" and did not balance each factor to determine whether there had been a constitutional violation. On appeal, we review each factor in turn "to ensure that the constitutional right has not been violated." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153. We are "mindful of the fact that [a] speedy trial analysis is not mechanical and must take into account all . . . relevant circumstances." *State v. Stock*, 2006-NMCA-140, ¶ 45, 140 N.M. 176, 147 P.3d 885 (internal quotation marks and citation omitted), *cert. quashed*, 2007-NMCERT-001, 141 N.M. 165, 152 P.3d 152.

## D.    Attachment of the Right

**{13}** "In general, the right [to a speedy trial] attaches when the defendant becomes an

4

accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (internal quotation marks and citation omitted). Defendant argues that his right attached on the date of his arrest—September 2, 2005. The State contends that the right attached on Defendant's date of indictment—October 12, 2005. *See Salandre*, 111 N.M. at 428, 806 P.2d at 568 (stating that nine months marks the maximum length of time that may be considered presumptively prejudicial for a simple case). Counting from either, or both, still results in a presumptively prejudicial delay. However, the district court found that the charges filed in magistrate court were not dismissed in good faith.

**{14}** Defendant cites *State v. McCrary*, 100 N.M. 671, 675 P.2d 120 (1984), for the proposition that this period between arrest and indictment should be included in the speedy trial analysis when the State acts in bad faith. In *McCrary*, where the state waited a year to dismiss a magistrate information in order to obtain an indictment in district court for a substantially different crime, *id.* at 674, 675 P.2d at 123, the Supreme Court found the State's actions justified as "necessary so [that the s]tate could prosecute for what it long maintained as the appropriate crime." *Id.* at 675, 675 P.2d at 124. Defendant also relies on *United States v. Lara*, 520 F.2d 460, 465-66 (D.C. Cir. 1975), to argue that "delay caused by tactical maneuvering requires that the time between filing to dismiss and the grand jury indictment must be counted." *McCrary*, 100 N.M. at 674, 675 P.2d at 123.

**{15}** Here, the State did not seek a preliminary hearing on the information, but dismissed it, citing a need for "further investigation." In magistrate court, Defendant had been charged with felony possession of a controlled substance and the same other two charges. The indictment was based on testimony of one of the two officers and occurred six months before the State even had the ability to conclusively identify the drug in question. To the district court and to this Court, it seems that nothing material changed in that time, but it remains the province of the district attorney as to whether to proceed by preliminary hearing in magistrate court or seek an indictment, whether or not a complaint is initially filed in magistrate court. *State v. Peavler*, 88 N.M. 125, 126, 537 P.2d 1387, 1388 (1975). Defendant acknowledges that generally the period during which charges are dropped in magistrate court and later refiled in district court is not counted in a speedy trial analysis. However, "the State's discretion to dismiss a criminal case in magistrate court and reinstate charges in the district court does not justify the delay." *Garza*, 2009-NMSC-038, ¶ 28. The assertion by the district attorney of a need for "further investigation," while specious, does not rise to an exercise in bad faith, when, as was the case here, the State pursued an indictment shortly after its dismissal of the magistrate complaint. Nevertheless, in *Garza*, this delay weighed against the state as negligent delay. *Id*. *Garza* distinguishes between the new six-month rule, which began with refiling in district court, and the overarching right to a speedy trial, which still counted the time. *Id*. Therefore, we hold that the right to a speedy trial attached at the filing of the case in magistrate court.

**E.     Reassignment, Waiting for Judges, and Other Reasons for Delay**

**{16}** With the rule set to expire April 26, 2006, the case was reassigned to Judge Sanchez on February 1, 2006, owing to the retirement of Judge Nelson. Defendant promptly excused

5

Judge Sanchez. The State argues that the delay during the period between February 7, 2006, and September 8, 2006, is not attributable to the State because it was made necessary by Defendant's excusal of Judge Sanchez. Defendant contends that only three days of this delay are directly attributable to the excusal because the case was immediately reassigned to the vacant Division I and, after that time, Defendant argues, the State had the responsibility to obtain an alternate judge, and the time therefore cannot be counted against him.

**{17}** The district court agreed with Defendant, concluding that the State had been "indifferent" to his speedy trial rights. As support for this notion, the court cited the State's awareness in February of the rule date and the fact that the State waited another two-and-a-half months before taking action in the case by requesting an extension just three days before the rule had run.

**{18}** In *State v. Benavidez*, 1999-NMCA-053, ¶ 35, 127 N.M. 189, 979 P.2d 234, *rev'd on other grounds by* 1999-NMSC-041, ¶ 5, 128 N.M. 261, 992 P.2d 274, the defendant's trial was delayed, in part, because four judges recused themselves. This Court held "that the length of delay caused by the recusals, a period that appears to amount to less than one month, should not be allocated to either party but should be excluded from the speedy trial period." *Id.* ¶ 35. *Benavidez* is distinguishable from the case before us. That case involved a period of less than one month in which seven available judges were assigned to the case; two were excused by the state, one by the defendant, and the remaining four recused themselves. *Id.* In deciding *Benavidez*, this Court cited one case restricting the time removed from speedy trial analysis to the time between recusal and appointment of a new judge, a second case dealing with delays not being excessive, and a third where the delay was not caused by either party. *Id.* On the facts before us, the first is apposite, and the other two are not, having been disposed of by *Garza*, as noted above. Here, Defendant's case was reassigned in just three days to a vacant bench, where it remained without further action until a judge was appointed to fill the seat. Those three days should not count against Defendant's right to a speedy trial. The rest of the time is administrative delay that does count against his speedy trial right.

**{19}** Defendant argued, and the district court agreed, that the State had a burden to request a judge pro tempore be assigned to the case when it became apparent that the delay due to judicial vacancy would be lengthy. "[W]here a mechanism exists to bring a defendant to trial, the [s]tate has a duty to use it." *State v. Lujan*, 2003-NMCA-087, ¶ 15, 134 N.M. 24, 71 P.3d 1286. Article VI, Section 15 of the New Mexico Constitution is quite clear that the Supreme Court can appoint a pro tempore judge on a case. In fact, Section 15(D) of that article allows parties to select their own judge pro tempore without involving the Supreme Court. N.M. Const. art. VI, § 15.

**{20}** From its pretrial declaration, we know the State was well aware of the deadline and its duty to take the case to trial prior to April 26, 2006. Further, the State knew about the sometimes lengthy process of filling judicial vacancies. The process of nominating and appointing a judge is governed by Article VI, Section 36 of the New Mexico Constitution, and the fact that an appointment can take sixty days or more is widely known and was

discussed in the motion hearing. N.M. Const. art. VI, § 36. In February 2006, more than sixty days remained on the rule, but the State took no action to take this case to trial until April 24, 2006, two days prior to the expiration of the rule, when it requested and received a six-month extension to October 26, over Defendant's objection. As mentioned above, identification of the controlled substance is a required element of the offense, and the State showed nothing to indicate that it had hurried along the necessary analysis of the drug for six months. In its petition, the State failed to describe what it had done to cause the case to proceed. Rather, the State merely cited the judicial vacancy as impeding the progress of the case.

**{21}** The weight counted against the state for a negligent delay depends on the amount of time that passed beyond the threshold required to trigger the speedy trial inquiry. *Garza*, 2009-NMSC-038, ¶ 29. Here, that length of time exceeds the presumptive amount of time for a simple case by more than half and exceeds the presumptively prejudicial amount set by *Garza* by almost one-fourth. *Id.* ¶ 47. Such delay weighs "less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* ¶ 26. Given the State's responsibilities to bring a case to trial, filing a petition for a pro tempore district judge is one option available to the State to move a case forward. We decline to rule that to do so is an obligation the State should pursue. But it is the State's "lack of progress" from October 2005 through February 2006 that concerns us. Hence, we hold, that the elapsed time weighs fully against the State and constituted actual prejudice to Defendant.

## F.      Assertion of the Right

**{22}** As this Court held in *State v. Laney*, 2003-NMCA-144, ¶ 17, 134 N.M. 648, 81 P.3d 591:

> Negligent delay, such as delay attributable to excessive caseload, is deemed a more neutral reason that weighs lightly against the [s]tate, whereas intentional delay, such as tactical delays, weighs heavily against the [s]tate. Intermediate categories of delay, such as bureaucratic indifference or failure to take reasonable means to bring a case to trial, are considered more culpable and weigh more heavily against the [s]tate, especially if the defendant has sought to safeguard his rights.

(Citation omitted.)

**{23}** We see nothing in the record to indicate that the State acted in bad faith or with the purpose of delaying the trial to hamper the defense. The delay here is negligent and administrative delay. However, "[b]ecause the [s]tate has the burden of bringing a case to trial, we . . . weigh unreasonable periods of delay against the [s]tate. The [s]tate must affirmatively seek to move the case to trial, even while plea negotiations are pending." *Maddox*, 2008-NMSC-062, ¶ 26 (citation omitted). Because *Laney* requires us to balance

7

this delay against the vigor with which Defendant asserted his speedy trial right, we do so now.

**{24}** A motion for speedy trial filed at the beginning of proceedings generally does not weigh heavily for a defendant. *Urban*, 2004-NMSC-007, ¶ 16 (explaining that when a motion for speedy trial is made "as part of the pro forma pretrial motions [that the d]efendant's counsel filed upon entering his appearance[, s]uch pro forma motions are generally afforded relatively little weight"). An objection to an extension of time is persuasive evidence that a Defendant is asserting his right to a speedy trial, *Laney*, 2003-NMCA-144, ¶ 24 ("While objections to the rule extensions may be persuasive evidence of an assertion, it is not conclusive."). That Defendant filed his motion to dismiss for a speedy trial violation in September—after Judge Paternoster's appointment in late April and an August pretrial conference where no such problem was mentioned—weighs in Defendant's favor, but only slightly. *See Garza*, 2009-NMSC-038, ¶ 34. For any more weight to be according in this context, Defendant's assertion should have been "vigorous," "timely," and "forceful." *Id.*

**G. Actual Prejudice to Defendant**

**{25}** Finally, we consider the last *Barker* factor, prejudice to Defendant. "In *Barker*, the [United States] Supreme Court identified three sources of prejudice in a delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and most importantly, (3) impairment of the defense." *Urban*, 2004-NMSC-007, ¶ 17. Generally speaking, we recognize that being indicted for a criminal offense occasions great turmoil in a defendant's life. His relationships with family and community are altered, sometimes irretrievably and irrespective of the outcome of the case. However, Defendant's claim of personal prejudice from suffering termination at work and turmoil in his personal life owing to an alleged speedy trial violation has not heretofore been accorded great weight by our courts. "Some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Laney*, 2003-NMCA-144, ¶ 29. In this case, Defendant was not in custody while awaiting trial. We weigh pretrial incarceration as a factor in the defendant's favor only when it is "undue." *Garza*, 2009-NMSC-038, ¶ 35. Here, we regard the prejudice accruing to Defendant as slight. Nevertheless, to the extent such prejudice does exist, it exists in addition to any prejudice found to result, as here, from the length of the delay itself.

**{26}** Defendant had remained in custody for two weeks until the dismissal. He was also fired from his job because of the pending felony charge, and as a result, suffered financial consequences and an inability to be re-employed. Defendant also testified that he dwelled on his problem so intensely that he lost sleep and that his tension and inability to work negatively affected his relationships at home. "It is for the court to determine whether the emotional trauma suffered by the accused is substantial and to incorporate that factor into the balancing calculus." *Salandre*, 111 N.M. at 431, 806 P.2d at 571.

**{27}** "[T]he focus of our inquiry in a speedy trial analysis is on undue prejudice." *Laney*, 2003-NMCA-144, ¶ 29. It is both the State's creation of an excessive delay for no good reason, together with the availability of mechanisms to speedily bring this case to trial, that creates prejudice for the Defendant. *See State v. Mascarenas*, 84 N.M. 153, 155, 500 P.2d 438, 440 (Ct. App. 1972) (holding that the state has a duty "to get on with the prosecution"). Still, the delay caused by the State does not weigh heavily against it, Defendant was not incarcerated while awaiting trial, and the delay did not negatively impact Defendant's preparation for trial. The reason he lost his job was only mollified by the fact that he never sought another, and his assertions of nervousness and sleeplessness do not constitute the particularized prejudice required for dismissal under a speedy trial violation. *Garza*, 2009-NMSC-038, ¶ 37.

## CONCLUSION

**{28}** For the foregoing reasons, we reverse the district court and remand this case for trial.

**{29}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**I CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**CELIA FOY CASTILLO, Judge (specially concurring).**

**CASTILLO, Judge (specially concurring).**

**{30}** I write specially on the holding of the majority that the State bore the burden to seek a judge pro tempore when it became apparent that the delay due to judge assignment would be lengthy. Defendant argues that "where a mechanism exists to bring a defendant to trial, the [s]tate has a duty to use it." *Lujan*, 2003-NMCA-087, ¶ 15. The mechanism relied on by Defendant is Article VI, Section 15 of the New Mexico Constitution, which allows the Supreme Court to appoint a pro tempore judge on a case, and Section 15(D) of that article which allows parties to select their own judge pro tempore without involving the Supreme Court. While I agree the constitutional provisions allow for appointment of a judge pro tempore, the Defendant in this case does not cite to authority that would require the State to request a judge pro tempore under these circumstances. Further, Defendant does not explain how such a mechanism would operate—at what point in time is the State required to petition the Supreme Court for a judge pro tempore or seek a substitute judge on its own? Defendant's answer—requiring the State to find a judge to try the case—is not a workable

solution for the problem of empty judicial divisions and could conceivably cause more delay by the time the newly appointed trial court found time for a case on its docket.

**{31}** Although I disagree with my brethren on the issue of requesting appointment of a judge pro tempore, I do agree that the delay between February 10, 2006, and April 21, 2006, weighs against the State. "This delay falls within the administrative burdens on the criminal justice system, such as overcrowded courts, congested dockets or the unavailability of judges, or an understaffed prosecutor's office." *Garza*, 2009-NMSC-038, ¶ 29 (citations omitted). This type of delay has been described as negligent by our Supreme Court. *See id.* (identifying delay that resulted from "the multiple reassignment of judges" as negligent).

_____

**CELIA FOY CASTILLO, Judge**

**Topic Index for** *State v. Gallegos***, No. 27,393**

| AE | **APPEAL AND ERROR** |
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| CT | **CONSTITUTIONAL LAW** |
| CT-ST | Speedy Trial |
| | |
| CL | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| | |
| CA | **CRIMINAL PROCEDURE** |
| CA-PJ | Prejudice |
| CA-SP | Speedy Trial |