**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: March 11, 2014

Docket No. 31,243

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

JOHN ERIC OCHOA,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}** Convicted of two counts of criminal sexual contact of a minor and one count of interference with communications, Defendant appeals. Because we agree with Defendant that his constitutional right to a speedy trial was violated, we reverse.

**ANALYSIS OF A SPEEDY TRIAL CLAIM**

1

**{2}** "The right to a speedy trial is a fundamental right of the accused," guaranteed by the "Sixth Amendment to the United States Constitution, [and] applicable to the states through the Fourteenth Amendment." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387; *see* U.S. Const. amend. VI; N.M. Const. art. II, § 14. To determine whether this right was violated, we consider the following four factors discussed in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972): "(1) the length of the delay, (2) the reasons given for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant." *State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370 (internal quotation marks and citation omitted).

**{3}** We first determine whether the length of pretrial delay is "'presumptively prejudicial.'" *Garza*, 2009-NMSC-038, ¶ 23 (quoting *Barker*, 407 U.S. at 533). Only when the length of delay is presumptively prejudicial, do we proceed to consideration of the *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 21 ("[A] 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors.").

**{4}** Defendant was arrested on May 12, 2008. His trial occurred just over two years later, on May 17-20, 2010. The twenty-four-month delay between Defendant's arrest and his trial surpasses the eighteen-month threshold for even the most complex cases, thereby triggering the need to weigh all of the *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 48 ("[E]ighteen months may be presumptively prejudicial for complex cases.").

**STANDARD OF REVIEW**

**{5}** "In considering each of the factors, we defer to the district court's factual findings but review de novo the question of whether [the d]efendant's constitutional right to a speedy trial was violated." *State v. Montoya*, 2011-NMCA-074, ¶ 9, 150 N.M. 415, 259 P.3d 820. Whether the right to a speedy trial has been violated is determined by the circumstances of each particular case. *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. We now turn to the *Barker* factors.

**DISCUSSION**

**1.      Length of the Delay**

**{6}** "In determining the weight to be given to the length of delay, we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the [speedy trial] claim." *State v. Wilson*, 2010-NMCA-018, ¶ 26, 147 N.M. 706, 228 P.3d 490 (internal quotation marks and citation omitted); *see also Garza*, 2009-NMSC-038, ¶ 24 (same). The district court made a finding that this case is complex, making the threshold

eighteen months.[1]  *See id.* ¶ 48.

**{7}** Because the delay between Defendant's date of arrest and his trial was slightly over twenty-four months, the delay stretches six months beyond the presumptively prejudicial threshold for complex cases. *See Garza*, 2009-NMSC-038, ¶ 48. Although this delay is not so extraordinary as to weigh *heavily* in Defendant's favor, it nonetheless weighs in his favor; *see also id.* ¶ 24 ("Considering the length of delay as one of the four *Barker* factors, the greater the delay the more heavily it will potentially weigh against the [s]tate."); *compare State v. Stock*, 2006-NMCA-140, ¶ 18, 140 N.M. 676, 147 P.3d 885 (concluding that the three and one-half years delay was "particularly egregious" and weighing the factor heavily in the [d]efendant's favor), *with Garza*, 2009-NMSC-038, ¶ 24 (concluding that a delay of one month beyond the threshold "was not extraordinary and does not weigh heavily in [the d]efendant's favor"), and *Wilson*, 2010-NMCA-018, ¶ 29 (stating that delay of five months beyond the guideline for a simple case was not so extraordinary or protracted as to compel weighing the length of delay factor against the state more than slightly).

## 2. Reasons for the Delay

**{8}** "*Barker* identified three types of delay, indicating that different weights should be assigned to different reasons for the delay." *Spearman*, 2012-NMSC-023, ¶ 25 (internal quotation marks and citation omitted). These are:  (1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason. *Garza*, 2009-NMSC-038, ¶¶ 25-27.

**{9}** Deliberate delay is to be "weighted heavily against the government." *Id.* ¶ 25 (internal quotation marks and citation omitted). On the other hand, "'[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id.* ¶ 26 (quoting *Barker*, 407 U.S. at 531). Indeed, "negligence . . . still falls on the wrong side of the divide between acceptable and

---

[1]Defendant argues that the case is of intermediate complexity, which would make the threshold nine months. *See id.* ¶ 48 ("Fifteen months may be presumptively prejudicial for intermediate cases."). However, "[t]he question of the complexity of a case is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities." *State v. Plouse*, 2003-NMCA-048, ¶ 42, 133 N.M. 495, 64 P.3d 522 (internal quotation marks and citation omitted). Defendant fails to articulate a reason why we should disagree with the district court's determination. We therefore "give due deference to the district court's findings as to the level of complexity." *See id.*; *State v. Coffin*, 1999-NMSC-038, ¶ 57, 128 N.M. 192, 991 P.2d 477; *but cf. Wilson*, 2010-NMCA-018, ¶ 24 (choosing not to give deference to the district court's determination that a case was intermediate and instead deciding that it was simple).

unacceptable reasons for delaying a criminal prosecution once it has begun." *Id.* (internal quotation marks and citation omitted). "The degree of weight we assign against the [s]tate for negligent delay is closely related to the length of delay[.]" *Id.* "Intermediate categories of delay, such as bureaucratic indifference or failure to take reasonable means to bring a case to trial, are considered more culpable and weigh more heavily against the [s]tate, especially if the defendant has sought to safeguard his rights." *State v. Gallegos*, 2010-NMCA-032, ¶ 22, 148 N.M. 182, 231 P.3d 1124 (alteration in original) (internal quotation marks and citation omitted).

**{10}** The record reflects that ten months of delay was due to negligence and for administrative reasons. Defendant's trial was set and reset eight times before he was finally tried. Several of the trial settings were vacated because the trial was set for a three-day period when three days were not actually available. The first trial, which was set for approximately six months after Defendant had been arrested, was reset due to one of the days falling on a holiday, causing a delay over one month long. Another trial setting was vacated because the trial was erroneously set for one day, causing a five-month delay. Another trial setting was vacated because the third day fell on a furlough for state employees ordered by the Governor, which would have left the defense counsel without any support staff. This caused a two-month delay. The State argues that this last period should weigh against Defendant because Defendant requested the continuance and defense counsel, having had notice of the furlough day, could have made alternate arrangements. However, the district court granted the continuance, acknowledging that it was necessary "to ensure that [d]efense [c]ounsel has adequate support staff to prepare a defense." The district court also stated at the hearing on Defendant's motion to continue that it was "aware of the mandatory furlough" and as a policy had "not been setting public defender trials on that day" but that it may not have entered its mind when setting Defendant's trial. Another trial setting was vacated because of a pending defense motion that had not been heard, causing a two-month delay. All of this ten-month delay, though negligent and administrative, weighs against the State. *See Gallegos*, 2010-NMCA-032, ¶ 23 ("[B]ecause the state has the burden of bringing a case to trial, we weigh unreasonable periods of delay against the state." (alterations, internal quotation marks, and citation omitted)).

**{11}** The State argues that Defendant caused a period of delay by moving to continue the second trial date, but we disagree and also weigh this delay against the State. Defendant's motion cites to his expert having inadequate time to prepare her report due to three postponements of interviews with the State's witnesses. Defense counsel was supposed to interview the witnesses on August 11, 2008, but did not get to interview the witnesses until November 10, 2008, which left slightly more than a month until the scheduled trial. Defendant requested a continuance to ensure adequate time to prepare and review the expert report in addition to reviewing any other evidence the State had yet to disclose. The State concurred with the request and did not file a response opposing Defendant's stated grounds. The district court granted Defendant's request. The State now asserts on appeal that defense counsel had to cancel the first interviews and the times the State cancelled after that were for good reasons. The State also alleges that Defendant's expert was not disclosed until sixteen

4

days before the scheduled trial, and the expert needed the safehouse interviews to prepare for trial. We refuse to consider this attempt to attack Defendant's stated reasons for requiring a continuance when the State failed to attack them below and, in fact, concurred. Although Defendant made the request, the three-month delay caused by the continuance weighs against the State.

**{12}** There are two additional periods of delay that neither party argues should count against the other. One trial setting was vacated by the district court due to a death in the judge's family, causing a three-month delay. Another delay was caused when trial was aborted after a prospective juror made inflammatory comments during voir dire that were heard by the entire jury panel. Fearing that the jury pool was tainted, Defendant requested that the trial be vacated and reset, which the district court granted. We do not weigh either of these delays against any party.

**{13}** The State is therefore responsible for most of the twenty-four month delay, although there is nothing in the record demonstrating that the delay was purposeful. Because none of the delay in this case is attributable to Defendant, we weigh this factor in Defendant's favor.

### 3.      Defendant's Assertion of the Right

**{14}** In considering Defendant's assertion of his right to a speedy trial, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. In doing so, "we accord weight to the frequency and force of the defendant's objections to the delay." *Id.* (internal quotation marks and citation omitted). "We also analyze the defendant's actions with regard to the delay." *Id.*

**{15}** Defendant was arrested on May 12, 2008, and trial commenced on May 17, 2010. Defendant repeatedly asserted his right to a speedy trial throughout this two-year delay. He first demanded a speedy trial on January 28, 2009, after eight months of incarceration. He demanded that this right be recognized again on June 22, 2009, and again on September 9, 2009, and again on September 17, 2009, and finally once more on November 23, 2009.

**{16}** Defendant filed a total of four motions to dismiss, asserting his right to a speedy trial was being violated. The first time Defendant moved to dismiss the case for speedy trial purposes was approximately two months after the State secured a Supreme Court order granting a six-month extension pursuant to Rule 5-604 NMRA, which Defendant had opposed. *See* Rule 5-604(B)(1) (requiring the commencement of a trial six months after the waiver of arraignment in district court); *see also State v. Savedra*, 2010-NMSC-025, ¶ 9, 148 N.M. 301, 236 P.3d 20 (withdrawing the six-month rule provisions set forth in Rule 5-604(B)-(E) effective for all cases pending as of May 12, 2010). The district court denied Defendant's motion to dismiss.

**{17}** The State then moved the district court to order another six-month extension to commence trial, and the district court granted the motion over Defendant's objection. A few

days later, Defendant made one of his speedy trial demands and thereafter filed his second motion to dismiss asserting a violation of his right to a speedy trial. The court denied this motion as well. Defendant ultimately moved to dismiss the cases for speedy trial violations two more times after further delay. The first was on February 11, 2010, twenty-two months after his arrest. Although the order is not in the record, the district court apparently denied this motion as well. After the seventh trial setting was vacated, Defendant filed his final motion to dismiss on April 20, 2010, which the district court also denied. We accord weight to the frequency and force of these repeated assertions.

**{18}** In considering Defendant's actions in relation to the delay, we acknowledge that some of the delay in this case was at Defendant's behest, yet we do not view those occasions as contrary to his repeated assertions. *Contra Coffin*, 1999-NMSC-038, ¶ 67 (observing that the defendant's assertion of his speedy trial right was not meaningful when he objected to the rule extension but also represented that he was not prepared for trial); *State v. Fierro*, 2012-NMCA-054, ¶ 54, 278 P.3d 541 (giving little weight to the defendant's assertions after considering the defendant's "actions in contributing to the delay and being unready for trial while simultaneously asserting his speedy trial right"), *cert. denied*, 2012-NMCERT-004, 293 P.3d 886. Even though the trial date was reset at the behest of Defendant more than once, we cannot conclude that Defendant's repeated assertions were artificial.

**{19}** Indeed, the majority of Defendant's requests to postpone or reset the trial were the result of legitimate concerns for securing a fair trial. The second continuance requested by Defendant was to vacate the sixth trial setting due to the last day of trial falling on a furlough day, which we already noted the district court found necessary "to ensure the [d]efense [c]ounsel has adequate support staff to prepare a defense." As far as Defendant's request to vacate the seventh trial setting after the juror made inflammatory comments, although the State insisted that another jury could be empaneled, the district court found that "the only proper and safe remedy and the one requested by the defense was to vacate the trial and reset it." We defer to the district court's findings. A defendant should not be required to choose between inadequately supported counsel or a potentially tainted jury of his peers and his right to a speedy trial. He must be able to effectively balance his desire for a fair trial and the ability to present a meaningful defense with his desire to speedily enjoy his day in court.

**{20}** Accordingly, we view Defendant's repeated assertions as attempts to proceed to trial as quickly as possible and weigh this factor in Defendant's favor.

### 4. Prejudice to Defendant

**{21}** In *Garza*, our Supreme Court explained the manner in which prejudice affects how heavily the other *Barker* factors weigh in a defendant's favor to find a speedy trial violation. *See Garza*, 2009-NMSC-038, ¶ 39. The Court held that "generally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* The Court went to explain that "if the length of delay and the reasons for the delay weigh heavily in [a] defendant's favor and [the] defendant has asserted his right and

6

not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Id.*

**{22}** "The heart of the right to a speedy trial is preventing prejudice to the accused." *Id.* ¶ 12. "Prejudice should be evaluated in light of the interest of the defendant, which the right was designed to protect." *State v. O'Neal*, 2009-NMCA-020, ¶ 27, 145 N.M. 604, 203 P.3d 135. The United States Supreme Court identified three such interests in *Barker*: (1) "to prevent oppressive pretrial incarceration[,]" (2) "to minimize anxiety and concern of the accused[,]" and (3) "to limit the possibility that the defense would be impaired." 407 U.S. at 532. "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citation omitted). "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.*

**{23}** Here, Defendant was prejudiced by being incarcerated for the entire two-year period between his arrest and trial. *See id.* ("[I]t cannot be denied that two-and-one-half years of pretrial incarceration . . . one's life on indefinite hold, waiting for one's trial to commence—is very substantial prejudice, of the precise kind that the Speedy Trial Clause was meant to avoid." (alteration and omission in original) (internal quotation marks and citation omitted)). "'The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.'" *Id.* (quoting *Barker*, 407 U.S. at 532-33). "With respect to pretrial incarceration, the question is whether the length of time was unacceptably long in that it became unduly prejudicial so as to factor into the analysis." *State v. Laney*, 2003-NMCA-144, ¶ 29, 134 N.M. 648, 81 P.3d 591. This Court previously concluded that a delay of twenty-two months prejudiced a defendant. *See State v. Moreno*, 2010-NMCA-044, ¶¶ 36-37, 148 N.M. 253, 233 P.3d 782 (considering twenty-two months of pretrial incarceration as the main factor in determining that the defendant was prejudiced). Here, Defendant was incarcerated even longer. This is the "precise kind" of prejudice the speedy trial right was intended to prevent.

**{24}** Having determined that Defendant was prejudiced by his lengthy pre-trial incarceration, per *Garza* it is not necessary for all of the other factors to weigh heavily in Defendant's favor. *See* 2009-NMSC-038, ¶ 39. Nevertheless, we have concluded that they all weigh in Defendant's favor.

**5.       Balancing The *Barker* Factors**

**{25}** The total delay in this matter was slightly over twenty-four months. This amount of delay was presumptively prejudicial, triggering further analysis of the *Barker* factors. For the reasons stated herein, we conclude: (1) the length of delay, (2) the reason for the delay, (3) Defendant's assertion of the right to a speedy trial, and (4) prejudice to Defendant all

7

weigh in Defendant's favor in this case. Moreover, because Defendant was prejudiced by his lengthy incarceration, the first three factors need not weigh heavily in Defendant's favor. Having examined the case in its entirety, we conclude that Defendant's constitutional right to a speedy trial was violated.

**CONCLUSION**

**{26}** Defendant's convictions are reversed. In light of our disposition herein, it is not necessary to discuss Defendant's remaining issues on appeal.

**{27}** **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**TIMOTHY L. GARCIA, Judge**

_____

**M. MONICA ZAMORA, Judge**

8