This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38946**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**CHRISTINA E. MOONEY a/k/a
CRISTINA E. MOONEY,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY
James Lawrence Sanchez, District Judge**

Hector H. Balderas, Attorney General
Cole P. Wilson, Assistant Attorney General
Santa Fe, NM

for Appellant

Candelaria Law LLC
Jacob R. Candelaria
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** The district court dismissed two cases against Defendant Christina E. Mooney after concluding that her right to a speedy trial had been violated in both cases. The State appeals, contending that: (1) the reasons for delay are entirely attributable to Defendant; (2) Defendant did not assert her speedy trial right with rigor; and (3) Defendant was not prejudiced by the delay. We reverse and remand.

### BACKGROUND

**{2}** On May 3, 2018, the State charged Defendant with a total of ten crimes by criminal information in two separate cause numbers. The first contained two counts of aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963), two counts of false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963), and a single count of obstructing roads, contrary to NMSA 1978, 67-7-1 (1905), for conduct alleged to have occurred on or about March 2, 2018. The second followed the execution of a search warrant for Defendant's home on March 16, 2018, and contained three counts of possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2001, amended 2019), a single count of distribution of marijuana, contrary to NMSA 1978, Section 30-31-22 (2011, amended 2021), and a single count of possession of one ounce or less of marijuana or synthetic cannabinoids, contrary to NMSA 1978, Section 30-31-23 (2011, amended 2021). Defendant waived her right to a preliminary hearing or grand jury presentation in both cases. The district court granted Defendant's motion to dismiss both cases for violation of her right to a speedy trial on March 18, 2020, at a status conference at which the State was not present.[1] The State appeals.[2] We include additional facts as they become necessary to our discussion below.

## DISCUSSION

### The Right to a Speedy Trial

**{3}** "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. In both cases before the district court, Defendant argued that her right to a speedy trial was violated pursuant to the United States and New Mexico Constitutions. At the outset, we note that Defendant did not argue before the district court that her right to a speedy trial under the New Mexico Constitution differs from the same right under the United States Constitution, and does not do so on appeal. For this reason, and because our courts have never treated these rights differently, "we will treat both protections as the same." *Id.* ¶ 16 n.1.

**{4}** In cases where the right to a speedy trial is at issue, New Mexico courts employ the test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). *See State v. Smith*, 2016-

---

[1] We note that the district court's written orders are based on Rule 5-604 NMRA, which is inapplicable to Defendant's cases, as she is charged with felonies. *See* Rule 5-604(C)(3) (explaining that the rule is not applicable to cases within the district court's exclusive trial jurisdiction); *see also State v. Savedra*, 2010-NMSC-025, ¶ 9, 148 N.M. 301, 236 P.3d 20.

[2] Defendant argues that the State did not preserve this issue for appeal. Specifically, Defendant contends that, because the State was not present at the hearing, it "failed to alert the [district] court of the State's present objections" to the orders dismissing the case. However, after review of the State's written responses to Defendant's motions to dismiss for violation of her right to a speedy trial and the full transcript of the hearing, we are satisfied that the district court was sufficiently apprised of the State's position and that its absence at the hearing, while troublesome, did not deprive the district court of an opportunity to make a considered ruling on Defendant's motions and the State's objections thereto. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (discussing what is necessary to preserve an issue for appellate review). We accordingly conclude the issue was adequately preserved.

NMSC-007, ¶ 58, 367 P.3d 420. The test consists of four factors that allow us to "weigh the conduct of both the [state] and the defendant." *Id.* (internal quotation marks and citation omitted). We balance "(1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his or [her] speedy trial right; and (4) the particular prejudice that the defendant actually suffered." *Id.* "Although we defer to the district court's factual findings concerning each factor, we independently review the record to determine whether a defendant was denied his or [her] speedy trial right, and we weigh and balance the *Barker* factors de novo." *State v. Lujan*, 2015-NMCA-032, ¶ 10, 345 P.3d 1103.

**Length of the Delay**

**{5}**     The first *Barker* factor, the "length of the delay," is "a threshold triggering mechanism used to determine whether the delay is presumptively prejudicial so as to continue with a full speedy trial analysis." *State v. Brown*, 2017-NMCA-046, ¶ 14, 396 P.3d 171 (internal quotation marks and citation omitted). "A delay is presumptively prejudicial if it exceeds twelve months for a simple case." *Id.* (alteration, internal quotation marks, and citation omitted). The district court categorized both of Defendant's cases as simple, and neither party disputes this characterization on appeal. We are deferential to this finding by the district court, provided that substantial evidence supports it. *See State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591. Given the parties' agreement on this question, the nature of the charges against Defendant, and the minimal number of anticipated witnesses in each of Defendant's cases, we conclude that it is a simple case. *See id.* (noting that deference is due "to the district court's finding on the question of complexity" because it "is familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities" (alteration, internal quotation marks, and citation omitted)); *State v. Rubio*, 2002-NMCA-007, ¶ 12, 131 N.M. 479, 39 P.3d 144 ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

**{6}**     Here, we begin the calculation for the length of the delay at the time of the filing of a criminal information. *See State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (stating that the speedy trial right attaches at the time "a filing of a formal indictment or information or arrest and holding to answer" (internal quotation marks and citation omitted)). The State filed a criminal information in both cases on May 3, 2018, and the date of dismissal was March 18, 2020. Thus, the length of the delay is over twenty-two months, exceeding the twelve-month threshold for simple cases by about ten-and-one-half months. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199. In cases where the delay was twice as long as the length of the delay considered to be presumptively prejudicial, we have weighed the delay heavily against the state. *See id.* (weighing a delay of twenty-four months in a simple case heavily against the state). Because the delay in this case is similar, we weigh this factor moderately to heavily against the State. We next examine the reasons for the delay.

**Reasons for the Delay**

**{7}** "Closely related to the length of the delay is the reason the [state] assigns to justify the delay. The reasons for the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *State v. Flores*, 2015-NMCA-081, ¶ 8, 355 P.3d 81 (internal quotation marks and citations omitted). There are three types of delay that we may assign the state and weigh at different degrees: (1) "a deliberate attempt to delay the trial in order to hamper the defense," which we weigh heavily against the state; (2) "negligent or administrative delay" which we weigh less heavily against the state; and (3) "appropriate delay, justified for a valid reason," which we weigh neutrally. *State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121 (alteration, internal quotation marks, and citations omitted). "The final type of delay is delay caused by the defense and this type of delay weighs against the defendant." *Brown*, 2017-NMCA-046, ¶ 18.

**{8}** The district court found that the first period of delay was from May 3, 2018 to December 4, 2018, the date of docket call, and weighed it neutrally. The parties do not dispute this finding, and it is supported by our review of the record. *See State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337 (stating that appellate courts accept as conclusive, findings that are undisputed and supported by the record). Following this seven-month period, then, is approximately fifteen-and-one-half months for us to consider.

**{9}** The district court found that the next period of delay was from December 4, 2018 to January 24, 2020, nearly fourteen months, and weighed it against Defendant because, during this time, two trial settings were vacated to accommodate Defendant's counsel. Defendant maintains that this period of delay is attributable to the State. We therefore examine the progression of Defendant's cases during this time in some detail.

**{10}** At the December 4, 2018 docket call, the parties indicated that they could not proceed to trial, primarily because Defendant had recently hired new counsel, who was her third attorney up to that point. Specifically, Defendant's counsel detailed witness interviews that had taken place and motions filed by Defendant just days before the docket call, as well as the need to file additional motions as a result of those interviews. The district court reset Defendant's trial to the next available docket call, nine months later on September 23, 2019, in an effort to accommodate Defendant's request to file additional motions. Defendant offered no objection.

**{11}** On May 31, 2019, Defendant again retained new counsel. At the docket call on September 23, 2019, Defendant's new attorney noted that he had received discovery "about two weeks" before the docket call and had not reviewed it. He also stated that he wished to schedule pretrial interviews, but had not "gotten a response or any type of scheduling or anything for that" from the State. The State expressed frustration that Defendant's cases could not proceed to trial due to Defendant retaining new counsel, her fourth attorney up to that point. The district court noted that, for purposes of a

speedy trial analysis, delay caused by Defendant changing counsel would weigh against her. The district court scheduled a pretrial conference for November 25, 2019.

**{12}** At the pretrial conference on November 25, 2019, Defendant's counsel informed the district court that he was in receipt of all discovery in both of Defendant's cases and that he had yet to conduct witness interviews. The State informed the district court that since last docket call setting on September 23, 2019, Defendant's counsel had not contacted the State to schedule witness interviews. Finally, though he had not filed the required request for hearing, Defendant's counsel informed the district court of a pending motion and his intent to file additional dispositive motions. The district court informed the parties that, once the period of time allowed for the State to respond to any new motions from Defendant had passed, it would set a motion hearing for all of Defendant's pending motions.

**{13}** The district court set a motions hearing for February 10, 2020. However, during the last week in January 2020, the district judge presiding over Defendant's cases filed notices of recusal in both cases. The cases were reassigned to a different district judge on January 27, 2020. The district court set a status conference for March 18, 2020, to hear all outstanding motions, and dismissed both of Defendant's cases on speedy trial grounds at that time.

**{14}** In light of the foregoing, we agree with the district court and the State that the nearly fourteen months between the initial docket call and the date of the district judge's recusal is attributable entirely to Defendant. While Defendant argues that actions by the State caused delays during this period, our thorough review of the record suggests otherwise. Indeed, the delays in this period were the result of Defendant retaining new counsel and each new attorney's need to become familiar with the case through discovery review, witness interviews, and motions practice, and there is no indication that the State contributed to these delays. It is true that in some instances, delays caused by reasonable attempts by defendants to replace their counsel may not be held against them. *See Serros*, 2016-NMSC-008, ¶ 74. However, we have no basis upon which to apply that principle here. Under these facts, we weigh this period against Defendant. *See State v. Steinmentz*, 2014-NMCA-070, ¶ 15, 327 P.3d 1145 (weighing a period of delay against the defendant where the state was "doing its part to move the case toward trial" but "failures of [the d]efendant's counsel and issues between [the d]efendant and his counsel delayed that progress").

**{15}** What remains is a period of approximately one-and-one-half months, between January 24, 2020 and March 18, 2020. As outlined above, what occurred during this period is the recusal of the presiding district judge from Defendant's cases, the reassignment of Defendant's cases to a different district judge, and, presumably because of this reassignment, the delay of the hearing for Defendant's motions from its original setting on February 10, 2020, to March 18, 2020. This delay is weighed against the State, but only slightly because it was administrative and not protracted. *See State v. Garza*, 2009-NMSC-038, ¶¶ 29-30, 146 N.M. 499, 212 P.3d 387 (recognizing that a delay attributable to judicial reassignments is administrative in nature, as it "is

considered negligent delay and is weighed against the [s]tate accordingly"); *id.* ¶ 26 ("The degree of weight we assign against the [s]tate for negligent delay is closely related to the length of the delay: Our toleration of such negligence varies inversely with its protractedness." (alteration, internal quotation marks, and citation omitted)).

**{16}** In short, we weigh the first seven months of the delay neutrally, the next fourteen months against Defendant, and the remaining one-and-one-half months slightly against the State. We turn now to analyze Defendant's assertion of her speedy trial right.

## Assertion of the Right

**{17** Looking to the third *Barker* factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted. Thus, we accord weight to the frequency and force of the defendant's objections to the delay." *Id.* ¶ 32 (internal quotation marks and citations omitted). Additionally, "we consider [the d]efendant's assertion or failure to assert his [or her] right to a speedy trial as a factor in determining whether [the d]efendant was deprived of that right." *Brown*, 2017-NMCA-046, ¶ 29. Finally, we "analyze the defendant's actions with regard to the delay." *Id.* ¶ 29 (internal quotation marks and citation omitted).

**{18}** Our review of the record indicates that Defendant asserted her speedy trial right twice in each case. One of Defendant's attorneys included a speedy trial demand in the caption of his entry of appearance. This entry of appearance did not make a substantive argument, nor did it contain the stock speedy trial language often seen in such entries of appearance. Regardless, we give little weight to such pro forma pretrial motions. *See Urban*, 2004-NMSC-007, ¶ 16. Defendant also asserted this right when she filed motions to dismiss for violation of her right to a speedy trial after her cases had been pending for over nineteen months. As outlined more fully above, at the time the motions were filed, all of the delays past the first seven months are attributable to Defendant. Thus, we weigh this assertion only slightly in Defendant's favor. *See State v. Samora*, 2016-NMSC-031, ¶ 20, 387 P.3d 203 (holding that "[the d]efendant's assertions of the right were mitigated by his acquiescence to, and responsibility for, numerous delays"); *Lujan*, 2015-NMCA-032, ¶ 18 ("New Mexico courts . . . have concluded that a motion to dismiss based on speedy trial grounds is an assertion of the right that is weighed against the [state], although it is generally not weighed heavily."). We proceed with an analysis of prejudice.

## Prejudice

**{19}** "The heart of the speedy trial right is preventing prejudice to the accused." *Brown*, 2017-NMCA-046, ¶ 33 (internal quotation marks and citation omitted). "Generally, the defendant has the burden to show particularized prejudice." *Id.* (internal quotation marks and citation omitted). Our analysis of prejudice includes "three interests that are affected by the right to a speedy trial: [(1)] to prevent oppressive pretrial incarceration; [(2)] to minimize anxiety and concern of the accused; and [(3)] to limit the

possibility that the defense will be impaired." *Serros*, 2016-NMSC-008, ¶ 84 (internal quotation marks and citation omitted).

{20}     The district court found that the only prejudice suffered by Defendant was "having these [cases] hanging over [her] head with this length of time." The State argues that Defendant has suffered only "generalized prejudice." Defendant counters that the record proves she suffered "actual prejudice" due to the delay in bringing her cases to trial, though she cites no portion of the record to support her argument.

{21}     In the district court, Defendant argued that, though she was not incarcerated, her original conditions of release caused her prejudice in the form of "previous difficulty in running her business" because she could not leave the state. This condition was lifted, however, at Defendant's request, on March 26, 2019. Moreover, the district court granted Defendant's earlier request for out-of-state travel to attend a wedding. *See State v. Parrish*, 2011-NMCA-033, ¶ 33, 149 N.M. 506, 252 P.3d 730 (holding that travel restrictions and employment are "disruptions that any accused person might suffer"). Defendant was not prejudiced because (1) she was not incarcerated, and (2) the conditions of the release did not rise to the level of being prejudicial; therefore, the "undue and oppressive" pretrial incarceration sought to be prevented by the right to a speedy trial is not at issue here. *Garza*, 2009-NMSC-038, ¶ 12 (internal quotation marks and citation omitted); *see id.* ¶ 35 ("The oppressive nature of pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration.").

{22}     As it concerns the remaining considerations material to our analysis, Defendant alleged that, due to her pending cases, she was "watched by local law enforcement" which caused her "extreme anxiety and concern." In a similar vein, Defendant contended that "[l]iving in a small town . . . prejudiced [her] by having her name attached to the extreme alleged charges she [was] facing." Defendant also alleged that her defense was "impaired by social media attacks and threats, physical attacks and threats, and conduct from those we entrust with our community and our lives."

{23}     Taken together, Defendant's allegations are not a showing of *particularized* prejudice. Pending criminal cases are undoubtedly a source of anxiety, but this anxiety generally does not contribute to "undue prejudice." *State v. Castro*, 2017-NMSC-027, ¶ 27, 402 P.3d 688 (observing "that the criminal process inevitably causes anxiety for defendants, but [appellate courts] focus only on undue prejudice"). What is left of Defendant's allegations of prejudice is broad and otherwise unsupported. Defendant failed to articulate how the size of the town in which she resides and the nature of the criminal charges against her caused her prejudice beyond that expected when facing criminal charges. *See Taylor*, 2015-NMCA-012, ¶ 21 (noting that "a defendant must substantiate" allegations of an impaired defense (internal quotation marks and citation omitted)); *State v. Gallegos*, 2010-NMCA-032, ¶ 25, 148 N.M. 182, 231 P.3d 1124 (recognizing that pending criminal charges "occasions great turmoil in a defendant's life" including changes to "relationships with family and community" but noting that this form

"of personal prejudice . . . has not heretofore been accorded great weight by our courts"). Moreover, Defendant did not explain how her ability to present a defense was impaired by any conduct from those in her community, online or otherwise. *See State v. Grissom*, 1987-NMCA-123, ¶ 48, 106 N.M. 555 746 P.2d 661 ("Unspecified allegations of an impaired defensive are unpersuasive."), *overruled on other grounds by Salandre v. State*, 1991-NMSC-016, ¶ 32, 111 N.M. 422, 806 P.2d 562. Finally, we balance the *Barker* factors.

**Balancing the *Barker* Factors**

**{24}**　In balancing the *Barker* factors, we remain cognizant that no single consideration is dispositive. *See Barker*, 407 U.S. at 533. And, generally, if defendants do not prove particularized prejudice, the remaining *Barker* factors must weigh sufficiently in their favor in order for this Court to hold that their speedy trial right was violated. *See Parrish*, 2011-NMCA-033, ¶¶ 32, 35. Here, while the length of the delay weighs heavily in Defendant's favor, the reasons for the delay weigh against her and only slightly against the State. Moreover, Defendant's assertion of her speedy trial right in each case weighs only slightly in her favor, and there is an absence of a showing of particularized prejudice. On balance, under these circumstances, the *Barker* factors do not weigh sufficiently in Defendant's favor to establish a violation of her right to a speedy trial in these cases.

**CONCLUSION**

**{25}**　We reverse and remand for proceedings consistent with our holding herein.

**{26}　IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**