# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: _November 18, 2014_

**NO. 31,998**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**LARRY B. TAYLOR,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

{1} This is another Sixth Amendment speedy trial case. The central question presented is whether a defendant permanently waives his constitutional right to a speedy trial because his attorney moves for a trial setting to be vacated due to a scheduling conflict with another trial setting and stipulates that the resulting delay will not be attributable to the State. The district court concluded, "it is not reasonable to say that this 'waiver' would allow a one (1) year, three (3) months and six (6) days delay" and dismissed the criminal information with prejudice on grounds that Defendant's constitutional right to a speedy trial was violated. We agree and affirm.

**BACKGROUND**

{2} On January 25, 2010, police responded to a domestic abuse call, which resulted in Defendant's arrest. The following day two separate criminal complaints were filed in the magistrate court. The first charged Defendant with criminal sexual penetration in the third degree, and the second alleged misdemeanor battery with respect to the same victim. After posting bond, Defendant was released on February 2, 2010. Defendant filed a written demand for a speedy trial in the felony case on February 11, 2010, and a written demand for a speedy trial in the misdemeanor case on February 16, 2010. A waiver of preliminary hearing and presentation to the grand jury was

filed on February 17, 2010, and the case was bound over to the district court. On March 5, 2010, a criminal information was filed in the district court charging both criminal sexual penetration in the third degree and misdemeanor battery on a household member.

{3}     On June 15, 2010, a jury trial was scheduled to commence before Judge Tatum on July 27, 2010. However, on July 6, 2010, Judge Tatum voluntarily recused himself from the case, and it was assigned to Judge Hartley. On July 12, 2010, the State recused Judge Hartley from hearing the case, and on July 26, 2010, Judge Orlik was assigned to the case. On September 17, 2010, trial was set to commence on October 6, 2010 before Judge Orlik. On October 5, 2010, Defendant filed a motion to vacate the trial on grounds that Defendant's attorney had another jury trial set on the same date and time. The State concurred in the motion with Defendant's stipulation that "any delay resulting from a continuance will not count against the State in speedy trial determinations." However, at no time after this motion was granted, did the State request a new trial setting.

{4}     Judge Orlik passed away on May 28, 2011, and Judge Mowrer was appointed to replace him. The case was then erroneously assigned to Judge Quinn on June 6, 2011, and when the mistake was discovered, the case was re-assigned to Judge Mowrer on July 19, 2011. Judge Mowrer voluntarily recused herself from the case

2

on September 5, 2011, because as the prior Deputy District Attorney, she had appeared on behalf of the State in the case at a prior hearing. Ten days later, on September 15, the case was re-assigned to Judge Quinn. On his own motion, Judge Quinn held a pretrial conference on December 13, 2011, and set the case to commence trial on January 11, 2012. At the pretrial conference, defense counsel alerted the court that there were speedy trial problems, and the day before trial, Defendant filed a motion to dismiss on speedy trial grounds, which Judge Quinn granted on January 12, 2012. The State appeals.

**STANDARD OF REVIEW**

{5} On appeal from an order of dismissal for a violation of a defendant's right to a speedy trial, we give deference to the district court's factual findings but review the speedy trial factors de novo. *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272. The speedy trial factors we consider are those set forth in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972): "(1) the length of the delay, (2) the reasons given for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant." *State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370 (internal quotation marks and citation omitted). "Each of these factors is weighed either in favor of or against the State or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *Spearman*, 2012-NMSC-023, ¶ 17.

No single *Barker* factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. Thus, in applying the *Barker* factors, we reject a bright-line analysis and analyze each case on an ad hoc basis in light of its own unique factual circumstances. *State v. Garza*, 2009-NMSC-038, ¶ 14, 146 N.M. 499, 212 P.3d 387.

**SPEEDY TRIAL ANALYSIS**

{6}     The Sixth Amendment directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" *Id.* ¶ 10 (internal quotation marks and citation omitted). In a similar vein, Article II, Section 14 of the New Mexico Constitution guarantees to an accused "a speedy public trial[.]" *Garza*, 2009-NMSC-038, ¶ 10 n.1. Thus, in our analysis, we are mindful that "[t]he right to a speedy trial is a fundamental right of the accused[,]" *id.*, that is "guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *Spearman*, 2012-NMSC-023, ¶ 16. *See Barker*, 407 U.S. at 533 (stating that "because we are dealing with a fundamental right of the accused," the balancing process of the *Barker* factors "must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution"). The first step in our analysis is to determine whether the length of

4

pretrial delay is "'presumptively prejudicial.'" *Garza*, 2009-NMSC-038, ¶ 23 (quoting *Barker*, 407 U.S. at 533). Only when the length of delay is "presumptively prejudicial" do we proceed to consideration of all of the *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 21 (stating that a "presumptively prejudicial" length of delay is "simply a triggering mechanism, requiring further inquiry into the *Barker* factors").

{7}     The district court found, and the State does not dispute, that this is a simple case. *See State v. Plouse*, 2003-NMCA-048, ¶ 42, 133 N.M. 495, 64 P.3d 522 ("We give due deference to the district court's findings as to the level of complexity."). In *Garza*, our Supreme Court adopted "one year as a benchmark for determining when a simple case may become presumptively prejudicial." 2009-NMSC-038, ¶ 48. Here, Defendant's right to a speedy trial attached upon his arrest. *See State v. Laney*, 2003-NMCA-144, ¶ 10, 134 N.M. 648, 81 P.3d 591 ("The right [to a speedy trial] attaches when the defendant becomes an accused, either at the time of arrest or upon the issuance of an indictment or information."). Thus, the almost twenty-four-month delay between Defendant's arrest on January 25, 2010, and his January 11, 2012 trial date surpasses the twelve-month threshold for simple cases. We therefore proceed to analyze and weigh the four *Barker* factors.

## A. Length of Delay

{8} "Considering the length of delay as one of the four *Barker* factors, the greater the delay the more heavily it will potentially weigh against the State." *Garza*, 2009-NMSC-038, ¶ 24; *see also Doggett v. United States*, 505 U.S. 647, 652 (1992) (noting that, once a defendant establishes that delay was presumptively prejudicial, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim").

{9} Here, the delay was almost two years, nearly twice as long as the twelve-month threshold for simple cases. We therefore weigh this factor heavily against the State. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19, 65, 327 P.3d 1129 (concluding that the length of delay, which was twice as long as the length of delay considered to be presumptively prejudicial, weighed heavily against the State), *cert. denied*, 2014-NMCERT-006, 328 P.3d 1188; *State v. Marquez*, 2001-NMCA-062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 (holding that a nine-month delay that extended beyond the then-nine-month threshold for simple cases weighed heavily against the State).

## B. Reasons for Delay

{10} Analysis of this *Barker* factor requires us to address the central question posed in this case: whether the reasons for the almost two-year delay should be weighed

6

against the State, and to what extent. *Garza*, 2009-NMSC-038, ¶ 25. "*Barker* identified three types of delay, indicating that 'different weights should be assigned to different reasons' for the delay." *Garza*, 2009-NMSC-038, ¶ 25. At one end of the spectrum, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* ¶ 27 (internal quotation marks and citation omitted). At the other end of the spectrum, "'official bad faith in causing delay will be weighed heavily against the government,' and excessive bad-faith delay may present an overwhelming case for dismissal.'" *Id.* ¶ 25 (quoting *Doggett*, 505 U.S. at 656). In the middle lies negligent or administrative delay. Although "negligent," the delay is nonetheless weighed against the State, "'since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant,'" but such a reason is not weighed heavily. *Garza*, 2009-NMSC-038, ¶ 26 (quoting *Barker*, 407 U.S. at 531).

{11}     The State acknowledges that the thirty-nine day delay between Defendant's arrest on January 25, 2010, and the filing of the criminal information in the district court on March 5, 2010, weighs slightly against the State. We agree. *See State v. Parrish*, 2011-NMCA-033, ¶ 24, 149 N.M. 506, 252 P.3d 730 (stating that the two-month delay due to the State's dismissal of charges in magistrate court and refiling the same charges in the district court was negligent delay that weighed slightly

7

against the State). We also agree with the State that during the four-month period from March 5, 2010, when the criminal information was filed in the district court, until July 6, 2010, when Judge Tatum voluntarily recused himself on July 6, 2010, the case was progressing in a normal fashion, with the result that this period is to be weighed neutrally. *See id.* ¶ 25 (stating that four and one-half month delay should be weighed neutrally because "the case progressed with customary promptness during this period"). This was followed by a delay of approximately three months, from July 6, 2010, until October 5, 2010, during which the case was assigned to Judge Hartley, and then reassigned to Judge Orlik, who set the case for trial to commence on October 5, 2010. Again, we agree with the State that this reassignment of judges "falls within the administrative burdens on the criminal justice system" and is weighed as negligent delay against the State. *Garza*, 2009-NMSC-038, ¶ 29.

{12} This brings us to the pivotal period of delay in this case. That period spans from the October 6, 2010 trial setting before Judge Orlik, which was vacated on Defendant's motion, to the January 11, 2012 trial setting made by Judge Quinn. This period was calculated by the district court to be "four hundred sixty-three (463) days, or one (1) year, three (3) months and six (6) days."

{13} We begin our analysis with Defendant's October 5, 2010 motion to vacate the October 6, 2010 trial setting. The State acknowledges in its brief "that this long of

8

a delay was probably not contemplated by Defendant in his motion for continuance." We agree. Defendant asked that the trial setting be vacated on grounds that Defendant's counsel had another trial scheduled on the same date at the same time before another judge. The motion added that "the parties stipulate that any delay resulting from a continuance will not count against the State in speedy trial determinations." With this agreement, the State concurred in the motion. By its own terms, the motion only stipulated that delay *resulting* from the continuance would not count against the State in a speedy trial determination; it did not permanently waive Defendant's constitutional right to a speedy trial. Thus, Defendant's concession anticipated a reasonable delay for the State to bring the case to trial rather than a grant to the State of an unlimited time to do so.

{14}    In assessing how this period of delay is to be considered, we remain mindful that our Supreme Court has rejected bright-line rules in speedy trial analyses, opting instead for an evaluation of the circumstances in each individual case. *Garza*, 2009-NMSC-038, ¶ 13 (noting that the *Barker* factors analysis "specifically rejects inflexible, bright-line approaches to analyzing a speedy trial claim"). Defendant accurately portrays the circumstances of this case in stating that after his motion to continue was granted, "[o]ne month passed and the State did nothing. Six months passed and the State did nothing. A year passed and the State did nothing. After 15

9

months, the trial court sua sponte ordered a status conference and set a date for trial." The district court made the same assessment and concluded that the long delay after Defendant's continuance motion "was caused by the State during which time the State took no steps to obtain a trial setting."

{15}    In *Vigil-Giron*, we examined the administrative delay in a case that was delayed for thirty-six months and concluded that the State "did not go far enough in providing evidence or explanation showing that this case was properly and efficiently managed or showing that the case could not have been managed considerably better for societal purposes and to protect [the d]efendant's right to a speedy trial." 2014-NMCA-069, ¶ 66. Yet, in that case the state had actually taken action to move the case forward, filing motions requesting the court to clarify the status of the case and requesting the court to address the outstanding motions as soon as possible. *Id.* ¶¶ 4, 6. In this case, on the other hand, the State did *nothing* to bring the case to trial after the continuance motion, and offers no explanation for its inaction. We therefore agree with the district court and conclude that this entire period of delay is attributable to the State. *See Marquez*, 2001-NMCA-062, ¶ 15 ("The State has a constitutional duty to make a diligent, good-faith effort to bring [a d]efendant to trial.").

{16} We are therefore left to consider what weight to assign to this period of delay. Negligent delay is not ordinarily weighed heavily against the state, *Garza*, 2009-NMSC-038, ¶ 26, but this is not a case of mere negligence. Instead, this is a case in which the State was inexcusably indifferent to its affirmative obligation to bring a simple case to trial. *See State v. Gallegos*, 2010-NMCA-032, ¶ 21, 148 N.M. 182, 231 P.3d 1124 (noting our concern for the States's "lack of progress" in moving the case forward and holding that the elapsed time weighed heavily against the State (internal quotation marks omitted)); *Cf. Spearman*, 2012-NMSC-023, ¶ 30 (agreeing with the district court's conclusion that the State's extremely dilatory conduct warranted weighing the reason for the delay heavily against the state); *State v. Lucero*, 1999-NMCA-102, ¶ 25, 127 N.M. 672, 986 P.2d 468 (noting that the prosecutor candidly acknowledged that his negligence in failing to know the contents of the prosecution file could possibly rise to bad faith). We recognize that various judge reassignments were made after Judge Orlik passed away and that we would ordinarily weigh such a delay neutrally. However, because the State did nothing to obtain a trial setting between the time that the continuance motion was granted and the time that Judge Orlik passed away (a span of 235 days), or at any time after that, we do not do so in this case.

{17} We therefore hold that the delay which the State allowed to elapse after Defendant's motion to vacate should be weighed heavily against the State. *See State v. Urban*, 2004-NMSC-007, ¶ 20, 135 N.M. 279, 87 P.3d 1061 (considering the State's "complete lack of an acceptable reason for fourteen months" of delay between the defendant's arrest and his indictment as significant in its determination that the defendant's speedy trial right was violated); *Ruffin v. State*, 663 S.E.2d 189, 199 (Ga. 2008) ("[T]he weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness.").

## C.    Assertion of the Right

{18} The right to a speedy trial is fundamental and is not waived even if never asserted. *See Garza*, 2009-NMSC-038, ¶ 32 ("Rights under this amendment are fundamental in nature so that a failure to assert them does not constitute waiver, but the timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as afterthought."). Defendant did not raise the claim as an afterthought. He asserted his right to a speedy trial in the magistrate court, and clearly still had speedy trial considerations on his mind when he stipulated that the delay caused by his motion to continue would not count against

12

the State, before ultimately filing his motion to dismiss on speedy trial grounds. These actions are sufficient to support the conclusion that Defendant adequately asserted his right and did not acquiesce in the delay. We give no consideration to the State's assertion that "[a]lthough it is not Defendant's responsibility to take himself to trial, Defendant did have the responsibility to explicitly reassert his right when the delay became unacceptable to him." The State cites no authority for this proposition so we assume there is none. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority.").

**D.    Prejudice**

{19}    Our Supreme Court in *Garza* explained how the prejudice factor is to be examined as follows:

> The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue. The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result

13

> of the incarceration. . . . However, without a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers.

*Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citations omitted).

{20} Here, Defendant was released on bond nine days after being arrested and was therefore exposed to minimal pretrial incarceration. Defendant's counsel argued, and the district court accepted, the traditional prejudicial concerns such as "restriction on his movement, restrictions on his liberty, excessive worrying about the charges against him," and concern that the delay could have caused the defense to be impaired. However, this is not sufficient by itself to demonstrate particularized prejudice caused by the delay. *See id.* ¶ 37 (noting that the district court had found "some actual prejudice in the form of restrictions imposed by pre-trial conditions of release and stress" but holding that "some non-particularized prejudice is not the type of prejudice against which the speedy trial right protects" (alteration and internal quotation marks omitted)); *Gallegos*, 2010-NMCA-032, ¶ 27 (holding that the defendant's loss of his job, and his assertions of sleeplessness and nervousness did "not constitute the particularized prejudice required for dismissal under a speedy trial violation"). No testimony or documentary evidence was offered or admitted into evidence in support of counsel's assertion that Defendant was prejudiced. *Spearman*,

14

2012-NMSC-023, ¶ 39 ("[T]he claimed showing of prejudice came in the form of allegations of counsel, both in the written motion to dismiss and at the hearing. Allegations of counsel are not generally considered evidence. [The d]efendant should have offered some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations of lost employment and bankruptcy." (citation omitted)).

{21}   Likewise, Defendant presented no evidence that his defense was actually impaired by the delay. Although this last type of prejudice is the "most serious," our Supreme Court emphasized that a defendant must "substantiate this type of prejudice." *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). Nevertheless, our Supreme Court also acknowledged that while prejudice is obvious if a witness dies or disappears during the delay, "[t]here is also prejudice if defense witnesses are unable to recall accurately events of the distant past[,]" and this type of prejudice "is not always reflected in the record because what has been forgotten can rarely be shown." *Id.* (internal quotation marks and citation omitted). We acknowledge that such may be the case, but here we have nothing more than allegations of counsel, and we will not speculate that important witness testimony was lost due to impaired memories caused by the delay.

15

{22} We therefore conclude that the arguments of counsel concerning Defendant's worry, anxiety, and the possibility that his defense could have been impaired failed to establish the particularized showing of prejudice as required by *Garza*. *Cf. Vigil-Giron*, 2014-NMCA-069, ¶¶ 51-53, 57 (citing the defendant's testimony regarding her increased anxiety, insomnia, and development of an autoimmune disease related to the stress—which was supported by medical records—as well as her loss of employment and inability to find employment as a result of the indictment, and actual impairment to her defense due to the death of a witness).

**E.      Balancing Test**

{23} As in *Garza*, "[t]he primary issue raised by the facts of [the] case is whether a court can find a violation of a defendant's speedy trial right without a particularized showing of prejudice." 2009-NMSC-038, ¶ 38. In *Garza*, the Court noted that a showing of actual prejudice may not always be possible and adopted the position of the United States Supreme Court in *Doggett*, 505 U.S. 647, and many other lower courts that a showing of particularized prejudice is not necessary in cases in which the other *Barker* factors weigh heavily in the defendant's favor and the defendant has not acquiesced in the delay. *Garza* states:

> We similarly hold [as in *Doggett* and many other lower courts] that generally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect. However, if

16

the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated.

2009-NMSC-038, ¶ 39.

{24} This holding in *Garza* reiterates that we are engaged in *balancing* the *Barker* factors, none of which is itself dispositive, to determine whether the constitutional right to a speedy trial has been violated. *See Cantu v. State*, 253 S.W.3d 273, 280-81 (Tx. Crim. App. 2008) ("Thus, the greater the [s]tate's bad faith or official negligence and the longer its actions delay a trial, the less [a] defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial."); *State v. Farrell*, 727 A.2d 501, 518 (N.J. Super. Ct. App. Div. 1999) ("As a matter of logic and decency, given that the four factors of *Barker* call for a balancing of considerations, when the delay in concluding a trial is excessively long by any measure, as here, the burden upon a defendant to satisfy the other factors is correspondingly diminished.").

{25} The length of the delay here was excessively long. All parties agree that this is a simple case, and almost two years elapsed from Defendant's arrest on January 25, 2010, to the trial setting of January 11, 2012. This is twice the amount of time to presume prejudice in a simple case. The State is responsible for 463 days of this

17

delay, and because the delay resulted from the State's inexcusable neglect and complete lack of diligence in seeking a trial setting, the period of delay weighs heavily against the State. Defendant adequately asserted his right to a speedy trial, and in moving to vacate the initial trial setting, Defendant did not permanently waive or abandon that right. We therefore hold that notwithstanding Defendant's failure to make a particularized showing of prejudice resulting from the delay, he is entitled to relief. *See Farrell*, 727 A.2d at 518 (concluding that because the delay was far beyond what was reasonable, and the reasons for the delay were the prosecutions "clear inattention to its responsibilities" together with the court's failure to prepare itself to try the matter, no showing of prejudice was required for the defendant to succeed on his argument that he was denied his adequately asserted right to a speedy trial). We therefore affirm.

**CONCLUSION**

{26} The order of the district court dismissing this case on speedy trial grounds is affirmed.

{27} **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

18

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**J. MILES HANISEE, Judge**