STATE V. VIGIL

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**KAREN VIGIL,**
**Defendant-Appellant.**

Docket No. A-1-CA-34592
COURT OF APPEALS OF NEW MEXICO
March 4, 2019

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY, Sarah C. Backus, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, NM, for Appellant

**JUDGES**

KRISTINA BOGARDUS, Judge, WE CONCUR: J. MILES HANISEE, Judge, JULIE J. VARGAS, Judge

**AUTHOR:** KRISTINA BOGARDUS

**MEMORANDUM OPINION**

**BOGARDUS, Judge**.

{1}     Defendant Karen Vigil appeals her convictions, following a jury trial, of two counts of great bodily injury by vehicle (DWI); one count of child abuse (no death or great bodily harm); one count of knowingly leaving the scene of an accident (great bodily harm); and two counts of criminal damage to property (more than $1,000). Defendant contends that (1) her convictions are not supported by sufficient evidence; (2) the

district court erred by improperly instructing the jury on the child abuse charge; (3) the district court abused its discretion in finding Defendant competent to stand trial; (4) the district court abused its discretion in allowing an expert witness to testify on retrograde extrapolation; and (5) the district court erred in failing to dismiss the charges against her on speedy trial grounds. We affirm.

**BACKGROUND**

{2}     The charges against Defendant stem from a three-car accident in which Defendant, her friend, Venessa Velarde, and Defendant's minor son, Antonio, were traveling from Santa Fe in a minivan north on U.S. 68 through Taos Canyon at high speed. Other drivers reported having seen the minivan being driven erratically and passing other vehicles in no-passing zones. As the minivan passed another vehicle just before a blind curve, the minivan and a car traveling in the opposite direction collided. Meanwhile, the driver of the car being passed veered off the road and crashed into a guardrail. Ms. Velarde and the driver of the car that collided with the minivan were seriously injured, and the other drivers' vehicles were totaled.

{3}     At trial, Defendant and Ms. Velarde disputed which of them was driving the minivan when it crashed. Defendant testified that Ms. Velarde was driving and that Defendant was sitting in the back seat. According to Ms. Velarde, she was a passenger at the time of the accident. Both she and Defendant testified that they had been drinking alcohol in the minivan during the drive. A test of Defendant's blood-alcohol content (BAC) conducted several hours after the accident measured her BAC at .07.

{4}     Because this is a memorandum opinion and the parties are familiar with the facts and the procedural history of the case, we provide additional facts only as necessary to our analysis.

**DISCUSSION**

**I.     Sufficient Evidence Exists to Support the Jury's Verdict**

{5}     At Defendant's trial, the jury was instructed that the State had to prove that Defendant "operated a motor vehicle" to convict Defendant of the two counts of great bodily injury by vehicle and of knowingly leaving the scene of an accident.

{6}     Defendant argues that the evidence the State presented is insufficient to sustain her convictions, and so the convictions must be vacated. Defendant bases her argument on her contention that the State failed to prove that she was driving the minivan when the accident occurred.

{7}     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted).

"Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. When reviewing for sufficiency of evidence, "we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.*

{8}     The State, to meet its burden to prove that Defendant was guilty of the crimes charged, presented direct evidence that Defendant was the driver through the testimony of Ms. Velarde. She testified that Defendant was driving the minivan recklessly and dangerously in the moments leading up to the accident.

{9}     In addition to its direct evidence, the State presented indirect evidence supporting reasonable inferences that Defendant was the driver. For example, Ms. Velarde testified to (1) having shattered her right-side pelvis, her right femur, and her right ankle in the accident; (2) requiring post-accident reconstructive surgery; and (3) not being able to walk unassisted until fifteen months after the accident. Ms. Velarde's serious injuries to the right side of her body is consistent with the conclusion that she was sitting in the passenger's, not the driver's, seat: the passenger side of the minivan, in Defendant's own words, was "completely crushed."

{10}     As another example, a nurse experienced in treating accident victims and who treated Ms. Velarde after the accident testified to seeing bruising apparently caused by a seatbelt on Ms. Velarde's right shoulder. The abrasion on Ms. Velarde's left shoulder, in contrast, appeared not to have been caused by a seatbelt, the nurse said. This evidence supports a reasonable inference that Ms. Velarde was in the passenger's seat at the time of the crash, placing Defendant in the driver's seat.

{11}     Additional testimony of a witness to the accident also supports the verdict. Jesse Montoya, the driver of the car that collided with the minivan, testified that he saw "a big frizzy figure" in the minivan's driver's seat before the crash. When asked the color of that "figure's" hair, he said he saw it after the accident when he saw the figure walking away from the scene; in saying that, he implied that the driver was the same person who walked away from the scene. Mr. Montoya's statements support the State's case because—by Defendant's admission—Defendant was the only one of the two female passengers in the minivan to walk away from the accident scene. Mr. Montoya's testimony supports a reasonable inference that Defendant was the driver.

{12}     Nevertheless, Defendant asks this Court to consider evidence, the absence of additional evidence, and inferences that support a different result. In so doing, she relies on her own testimony that she was not the driver. She notes that Ms. Velarde has curly hair matching the description of witnesses who saw the driver, and that both had post-accident injuries to their left shoulders that could have been caused by a driver's-side seatbelt. She further complains that the accident investigation was incomplete and that no witness at trial either corroborated or impeached Ms. Velarde's testimony. In sum, Defendant asserts that there was no more evidence to convict her than there was to convict Ms. Velarde.

{13}    In essence, Defendant asks us to weigh the witnesses' credibility and entertain the question of whether—with the evidence presented at trial and without further evidence—the jury could have reached a different conclusion. However, it is the role of the jury to gauge Defendant's credibility and Ms. Velarde's credibility and to resolve the conflict in their testimony. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. The jury was free, as it did, to reject Defendant's version of the facts. *See Rojo*, 1999-NMSC-001, ¶ 19. In contrast, we are not free to concern ourselves with the contrary evidence supporting Defendant's acquittal. *See id.*

{14}    Rather, we ask whether there is "relevant evidence that a reasonable mind might accept as adequate to support [the] conclusion" that Defendant was driving the minivan at the time of the accident. *See id.* Based on Ms. Velarde's testimony that Defendant was the driver, on the nature of Ms. Velarde's injuries, on the location of the damage to the minivan, and on the witnesses' pre- and post-accident observations, we conclude that sufficient evidence supports the jury's finding that Defendant was the driver.

## II.    Use of the Child Abuse Jury Instruction Does Not Constitute Fundamental Error

{15}    Defendant's next assertion is that the district court fundamentally erred by including the phrase "knew or should have known" in the jury instruction on Defendant's child abuse charge. The portion of the instruction Defendant refers to reads:

> For you to find [D]efendant guilty of child abuse which did not result in death or great bodily harm, . . . the [S]tate must prove . . . [that d]efendant acted intentionally or with reckless disregard and without justification; To find that [Defendant] acted with reckless disregard, you must find that [Defendant] *knew or should have known* [her] conduct created a substantial and foreseeable risk, [D]efendant disregarded that risk and [D]efendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of Antonio Vigil[.]

(Emphasis added.) The instruction was based on UJI 14-604 NMRA (1999), the instruction in effect at the time of the trial. Neither party objected to the instruction.

{16}    Five days before Defendant's trial, our Supreme Court decided *State v. Consaul*, 2014-NMSC-030, 332 P.3d 850, which concerned the application of the child abuse statute and its corresponding uniform jury instructions. *Consaul* reiterated that the culpability standard associated with the crime of child abuse is recklessness. *Id.* ¶¶ 34, 38. In *Consaul*, the Court expressed concern about the then-current child abuse uniform jury instructions, similar to the one used at Defendant's trial. *Id.* ¶ 39. In particular, the Court cast doubt on the "continued vitality of 'knew or should have known' in [the] instructions," *id.* ¶ 40, because of the phrase's "close association with principles of civil negligence and ordinary care." *Id.* ¶ 39.

{17}     In *Consaul*, the Supreme Court indicated that it would address "in detail" the uniform jury instructions associated with the child abuse statute "in the near future." *Id.* ¶ 40. About seven months later, the Court amended UJI 14-604 in part by removing "knew or should have known" from the definition of "reckless disregard" and inserting in its place "more than merely negligent or careless." The Court recompiled the instruction as UJI 14-612 NMRA, with an effective date of April 3, 2015.

{18}     Defendant now objects to the use of "should have known"—the since-removed phrase associated with the civil negligence culpability standard—in the child abuse jury instruction at her trial. We review for fundamental error because the issue was not preserved. *See, e.g.*, *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Under the fundamental error standard, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction . . . despite the fact that the juror considers the instruction straightforward and perfectly comprehensible on its face." *Id.* (internal quotation marks and citations omitted). "Thus, juror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* We bear in mind in our review that "[t]he rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146.

{19}     On appeal, the parties invite us to resolve this issue by examining, among other topics: (1) the integrity, in light of *Consaul*, of the child abuse jury instruction used at Defendant's trial, including whether the instruction's other parts make up for its alleged deficiency; (2) whether the district court should have learned of *Consaul* and responded to it by modifying the child abuse jury instruction used at trial; and (3) the level of tolerance for UJI 14-604 our Supreme Court expressed by its *Consaul* language and its subsequent UJI-amending actions—and, by extension, the level of tolerance for it we should now show. Further, Defendant argues that the district court erred by allowing the jury to be instructed as to both intentional and negligent child abuse in the same instruction. In light of Defendant's failure to address this contention further or develop a supporting argument, we decline to review this undeveloped argument. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701.

{20}     We need not address Defendant's arguments regarding the effect *Consaul* should have had on the child abuse jury instruction used at trial to resolve the issue. We look instead to the rule of fundamental error and ask if Defendant's guilt regarding child abuse is so doubtful that it would shock the conscience to let her conviction stand. *See Orosco*, 1992-NMSC-006, ¶ 12. Under this standard, we cannot conclude that use of the jury instruction amounted to fundamental error. The trial record includes testimony by Ms. Velarde that she and Defendant took turns doing shots from two pints of Yukon Jack whisky on the drive from Santa Fe north toward Taos with Defendant's teenage son, Antonio, in the minivan. She further testified that, before the accident, Defendant was driving the minivan erratically and recklessly, passing cars in no-passing zones and

in blind curves, speeding, driving more daringly in response to Ms. Velarde's pleas that she slow down, and not caring about the danger of her actions.

{21}    The evidence presented at trial is sufficient to satisfy the revised UJI's requirement of showing "more than merely negligent or careless" conduct. *See* UJI 14-612. Thus, we cannot say that there has been a "miscarriage of justice" or that it would "shock the conscience to permit the conviction to stand[.]" *Orosco*, 1992-NMSC-006, ¶ 12. We conclude that the district court's use of the jury instruction on child abuse does not constitute fundamental error.

### III.    District Court's Finding of Competency Was Not an Abuse of Discretion

{22}    Defendant argues that the district court abused its discretion by determining that she was competent to stand trial. Defendant claims that she was unable to rationally assist her attorney and contends that the bulk of evidence presented to the district court on the matter suggested that she was not competent.

{23}    Defendant presented evidence of her incompetency to stand trial, and the State presented countervailing evidence in response. Defendant submitted to three forensic evaluations of her competency. The district court ordered, and Dr. Cave conducted, the first. Dr. Cave concluded that Defendant was not competent. The State requested a second evaluation, which Dr. Kernen conducted. Dr. Kernen found Defendant competent. Lastly, Dr. Westfried, Defendant's expert, conducted a third evaluation and found Defendant not competent.

{24}    At the competency hearing, the district court did not hear testimony from Dr. Cave, but did hear testimony from Dr. Westfried, Dr. Kernen, and Dr. Shwartz, who works with Dr. Kernen and who reviewed Dr. Kernen's evaluation. Dr. Westfried testified that he reviewed the reports of the other experts and found them inconclusive. He testified that Defendant was not malingering while undergoing evaluations and that she was the driver at the time of the accident but had created a delusion that Ms. Velarde instead was the driver. Overall, Dr. Westfried believed that Defendant lacked a rational perspective and hence was unable to rationally assist her attorney.

{25}    Dr. Kernen and Dr. Shwartz testified to the contrary. Dr. Kernen testified that, in her opinion, Defendant did not have a delusional disorder and was malingering by feigning a multiple personality disorder. Dr. Kernen believed that Defendant was competent to stand trial. Dr. Shwartz testified that she concurred with Dr. Kernen's findings of malingering and competency.

{26}    At the end of the competency hearing, the district court found that Defendant did not overcome the presumption that she was competent to stand trial. The court determined that Defendant failed to show by a preponderance of the evidence that she was incapable of assisting in her own defense, a finding that would have qualified her as incompetent to stand trial. *See State v. Rotherham*, 1996-NMSC-048, ¶ 13, 122 N.M. 246, 923 P.2d 1131 ("An accused must have the capacity to assist in his own defense

and to comprehend the reasons for punishment."). The district court reached its conclusion largely by finding Dr. Kernen's and Dr. Shwartz's testing more reliable than Dr. Westfried's.

{27}   We review district court determinations of competency to stand trial for abuse of discretion, *State v. Linares*, 2017-NMSC-014, ¶ 23, 393 P.3d 691, which occurs when a ruling is "against logic" and "clearly untenable or not justified by reason." *Id.* ¶ 24 (internal quotation marks and citation omitted). "Where an abuse of discretion is claimed by appellant, appellant bears a heavy burden, in view of the long-standing rule that the reviewing court will not overturn the action of the trial court absent a patent abuse of manifest error in the exercise of discretion." *Spingola v. Spingola*, 1978-NMSC-045, ¶ 19, 91 N.M. 737, 580 P.2d 958. On this review, "[w]e view the evidence in the light most favorable to the district court's decision, resolve all conflicts and indulge all permissible inferences to uphold that decision, and disregard all evidence and inferences to the contrary." *Linares*, 2017-NMSC-014, ¶ 24.

{28}   That is, we disregard the findings and conclusions in the reports and testimony on Defendant's competency to stand trial that do not support the district court's finding of competency. We are left with the testimony of Dr. Kernen, an expert in forensic neuropsychology, and Dr. Shwartz, an expert in forensic psychology and neuropsychology, who stated plainly that Defendant was competent to stand trial, and who laid out cogent reasons for that conclusion.

{29}   The district court, in its fact-finding role on this issue, had the choice to accept Dr. Kernen's and Dr. Shwartz's testimony and to reject Dr. Westfried's. *See State v. Jason F.*, 1998-NMSC-010, ¶ 29, 125 N.M. 111, 957 P.2d 1145 (noting that court, as fact-finder at competency hearing, is not required to credit testimony of experts). The court so chose. Defendant articulates no reason that the choice was illogical or clearly untenable, and having reviewed the record, we see none. We conclude that the district court did not abuse its discretion by determining that Defendant was competent to stand trial.

## IV.     Admission of Expert Witness's Testimony on Retrograde Extrapolation Was Not an Abuse of Discretion

{30}   Defendant contends that the district court erred by admitting the trial testimony of Gerasimos Razatos, asserting that the State's "sole purpose" in calling Mr. Razatos was for him to testify on retrograde extrapolation, which calculates an individual's prior BAC level on the basis of a subsequently administered BAC test. Defendant further claims that she objected to Mr. Razatos' retrograde extrapolation testimony because it was not relevant and because he was not qualified to testify on retrograde extrapolation. Defendant argues that admitting this testimony was prejudicial because it invited the jury to improperly speculate as to her BAC at the time of the accident. The State counters that the court did not abuse its discretion in this way because Mr. Razatos had extensive qualifications and experience in the field of blood-alcohol analysis, the general field encompassing retrograde extrapolation. The State contends that

shortcomings, if any, in Mr. Razatos' qualifications affect the weight of his testimony, not its admissibility.

{31}   The State called Mr. Razatos, a thirteen-year employee of the Department of Health's Toxicology Bureau, to testify about Defendant's BAC because it was he who certified the test result. Mr. Razatos testified on his qualifications, his experience as a test reviewer, and the factors he considered when reviewing Defendant's BAC test.

{32}   Defendant raised no objection to Mr. Razatos' expert testimony until the State asked Mr. Razatos to explain retrograde extrapolation. At that point, Defendant objected, not based on relevancy, but based solely on Mr. Razatos' qualifications to perform retrograde extrapolation. The court allowed defense counsel to question Mr. Razatos regarding his specific training on and experience with retrograde extrapolation. Mr. Razatos testified that his expertise in blood-alcohol analysis included retrograde extrapolation, although he had not been formally tested on it. The court ruled, over Defendant's objection, that Mr. Razatos was qualified as an expert in the field of blood-alcohol analysis.

{33}   Once the court found that Mr. Razatos was qualified in the field of blood-alcohol analysis, he testified generally about the theory of retrograde extrapolation but emphasized that he did not perform a retrograde extrapolation in this case because he lacked the data necessary to do so. Mr. Razatos offered no opinion on Defendant's BAC at the time of the accident.

{34}   We review the district court's admission of expert testimony under an abuse of discretion standard. "The rule in this [s]tate has consistently been that the admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. "The trial judge has wide discretion to determine whether a witness is qualified to give testimony as an expert, and no set criteria can be laid down to test an expert's qualifications." *State v. McDonald*, 1998-NMSC-034, ¶ 19, 126 N.M. 44, 966 P.2d 752 (alteration, internal quotation marks, and citations omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

{35}   We see no abuse of discretion here. Mr. Razatos had extensive experience and training in blood-alcohol analysis. The fact that he had not been specifically tested in retrograde extrapolation goes to the weight of his testimony on the subject, but does not preclude its admissibility. *See McDonald*, 1998-NMSC-034, ¶ 21 (observing that a jury is free to weigh every aspect of an expert's qualifications and free to disregard an expert's testimony entirely).

{36}   Defendant argues next that she was prejudiced by Mr. Razatos' general discussion of retrograde extrapolation because it invited jury speculation, which we interpret as an argument that the testimony does not assist the trier of fact to understand the evidence or to determine a fact in issue pursuant to Rule 11-702 NMRA. Defendant refers to a question the jury asked—"In general how much alcohol is metabolize[d] per hour by someone [Defendant's height and weight]?"—as evidence of speculation and asserts that the jury engaged in its own "pseudoscience" to convict her. Defendant cites *State v. Downey*, 2008-NMSC-061, ¶ 28, 145 N.M. 232, 195 P.3d 1244, for the proposition that expert testimony on retrograde extrapolation is unreliable and inadmissible when it is "predicated on factual assumptions unsupported by the evidence adduced at trial[.]" Unlike the expert in *Downey*, the expert in this case made clear that he did not have the relevant information to calculate Defendant's BAC, and he reached no conclusion regarding Defendant's BAC at the time of the accident. Because no retrograde extrapolation was done by the expert here, *Downey* does not apply.

{37}   Defendant offers no evidence, beyond the jury's question, to support her claim that the jury's verdict is based on improper speculation. Defendant fails to direct us to any evidence that the jury's question was put to Mr. Razatos or any witness during the trial. The jury was instructed at the start of trial that it could submit a question to the court, but also that if a question was not asked, not to give it any further consideration. *See* UJI 13-112 NMRA. At the end of trial, the jury was specifically instructed that its verdict should not be based on "speculation, guess or conjecture." We presume that the jury followed the instructions given. *See State v. Sellers*, 1994-NMCA-053, ¶ 28, 117 N.M. 644, 875 P.2d 400 ("There is a presumption that the jury follows the instructions they are given.").

{38}   The jury had ample evidence, without engaging in speculation based on retrograde extrapolation, to conclude that Defendant was driving under the influence of alcohol at the time of the accident. Ms. Velarde testified that she and Defendant shared two pints of Yukon Jack whisky between Santa Fe and the crash site in Taos Canyon. Other witnesses testified that Defendant was driving fast, erratically, and dangerously and was passing cars hazardously on the narrow two-lane road. The Department of Health's Toxicology Bureau employee who performed the blood-alcohol test testified that Defendant's BAC was .07 when the sample was taken. Based on the general nature of the testimony and the instructions given by the district court, we hold that the district court did not abuse its discretion by allowing Mr. Razatos' testimony.

## V.   Defendant's Right to a Speedy Trial Was Not Violated

{39}   Defendant asserts that the district court erred by denying her motion to dismiss because her right to a speedy trial was violated. There was a delay of approximately forty months between the filing of the underlying criminal information and the final trial setting. Defendant contends that the delay is prejudicial because her case was of intermediate complexity, and for such cases, any delay beyond fifteen months is presumptively prejudicial. *See State v. Garza*, 2009-NMSC-038, ¶ 48, 146 N.M. 499, 212 P.3d 387 (adopting fifteen months of delay as the guideline beyond which

intermediate cases may become presumptively prejudicial). The State concedes that the delay exceeded the fifteen-month presumptively prejudicial period, but contends that Defendant's right to a speedy trial was not violated because most of the delay was attributable to her. After careful review of the record, we conclude that the delay in this case did not violate Defendant's right to a speedy trial.

{40}    The accused in New Mexico have a fundamental right to a speedy trial guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. *Garza*, 2009-NMSC-038, ¶ 10. Our courts have not interpreted New Mexico's speedy trial guarantee differently from the Sixth Amendment guarantee, and thus we view them as co-extensive. *State v. Spearman*, 2012-NMSC-023, ¶ 16 n.1, 283 P.3d 272. We do not apply an inflexible, bright-line approach to speedy trial analyses; rather, we analyze the specific facts and circumstances of each case to determine whether an accused person's speedy trial right has been violated. *Garza*, 2009-NMSC-038, ¶¶ 11, 14.

{41}    To determine whether a criminal defendant's speedy trial right was violated, we analyze the four factors established in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972):

> Under the *Barker* framework, courts weigh the conduct of both the prosecution and the defendant under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered.

*State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420 (internal quotation marks and citation omitted). None of these factors alone is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial[;] . . . they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. "In analyzing these factors, we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

## A.    Length of Delay

{42}    The length of delay is both "a triggering mechanism requiring further inquiry into the *Barker* factors" and also one of the four factors in the *Barker* analysis. *Spearman*, 2012-NMSC-023, ¶ 20 (internal quotation marks and citation omitted). "Whether or not the threshold for further inquiry is met depends upon whether the delay is considered presumptively prejudicial." *State v. Gallegos*, 2016-NMCA-076, ¶ 6, 387 P.3d 296. Here, the district court did not determine the complexity of this case, leaving us free to do so. *See State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135. This case involved six felony counts, approximately ten witnesses, expert testimony, and it was set for a three-day trial. These factors support the conclusion that the case was

intermediately complex. *See State v. Montoya*, 2011-NMCA-074, ¶ 16, 150 N.M. 415, 259 P.3d 820 (concluding that a case with four "somewhat difficult" charges and nine witnesses, including a forensic scientist, was intermediately complex); *see also State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (noting that intermediately complex cases are characterized by numerous witnesses, expert testimony, and scientific evidence). For an intermediately complex case, a delay of longer than fifteen months is presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶ 48.

{43}    Although the crash occurred on August 11, 2010, Defendant was not charged until April 13, 2011, when the State filed a criminal information against her for two counts of great bodily injury, one count of child abuse, and one count of leaving the scene of an accident. Later, on April 19, 2012, a grand jury indicted Defendant on the two counts of criminal damage to property, and the cases were joined on May 14, 2012.

{44}    Our appellate courts have yet to address a speedy trial issue with two separate dates of attachment, and we need not do so here. With clarity in mind, and concluding that Defendant's right to speedy trial was not violated regardless of our approach to the question, we treat all of Defendant's charges as if they were part of the initial set of charges. Accordingly, we assume that Defendant's right to a speedy trial attached on the date of her initial charges, April 13, 2011. *See State v. Ross*, 1999-NMCA-134, ¶¶ 13-15, 128 N.M. 222, 991 P.2d 507 (holding that, in a felony prosecution, an indictment or information must be filed to trigger a defendant's speedy trial right). Defendant's trial started on August 26, 2014. The time from attachment of her speedy trial right to trial was more than forty months, or approximately twenty-five months beyond the fifteen-month threshold for an intermediately complex case. Because the delay was presumptively prejudicial, we continue to a full *Barker* analysis.

{45}    This forty-month delay, more than twice as long as the presumptively prejudicial delay period, weighs heavily against the State and in Defendant's favor. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (holding that a twenty-four-month delay in a simple case weighed heavily against the state); *see also State v. Brown*, 2017-NMCA-046, ¶ 17, 396 P.3d 171 (weighing forty-two-month delay in a complex case, which was approximately twice as long as the presumptively prejudicial delay, heavily against the state).

## B.    Reasons for Delay

{46}    The reasons assigned to justify delay in a particular case may lessen or increase the prejudice to the defendant caused by the delay. *Garza*, 2009-NMSC-038, ¶ 25. We attribute three types of delay to the state and one type to the defendant. *Brown*, 2017-NMCA-046, ¶ 18. The first type, intentional delay, which is a "deliberate attempt to delay prosecution of the case in order to hamper the defense[,]" is weighed heavily against the state. *Id.* The second type, negligent or administrative delay, is weighed against the state, but more lightly than intentional delay. *Id.* The weight assessed against the state for negligent or administrative delay, however, increases as the length of that delay increases. *Id.* The third type, appropriate delay, which is delay justified by valid reasons,

such as a missing witness, is neutral and does not weigh against the state. *Id.* Finally, delay caused by the defense generally weighs against the defendant. *Id.*

{47}    Because speedy trial analysis depends on the facts and circumstances of each case, we review the pertinent facts of this case "to allocate to each side the reasons for the delay and determine the weight we should assign the reasons for the delay." *Gallegos*, 2016-NMCA-076, ¶ 10. We proceed by analyzing the periods of delay separately.

**1.      Seven-Month Delay from Filing Criminal Information to First Trial Continuance**

{48}    For purposes of this appeal, Defendant's speedy trial right attached when the State filed its criminal information on April 13, 2011. On May 10, 2011, the State filed its request for scheduling order, motion for discovery, demand for notice of alibi, request to interview witnesses, and notice of intent to call witnesses. Trial was set to begin on November 28, 2011.

{49}    We weigh this approximately seven-month delay neutrally because the case was proceeding normally. *See Taylor*, 2015-NMCA-012, ¶ 11 (weighing neutrally a delay during which the case was "progressing in a normal fashion"); *see also Garza*, 2009-NMSC-038, ¶ 27 (recognizing that some pretrial delay is inevitable and justifiable).

**2.       Six-Month Delay for Plea Negotiations and for Joinder**

{50}    The State moved to continue the trial because the parties were engaged in plea negotiations and because discovery was not finished. Defendant concurred in the motion. On January 25, 2012, the State requested a new trial setting and the case was reset for trial on April 9, 2012. The two cases were then joined and trial was rescheduled for June 11, 2012. On May 21, 2012, Defendant filed a motion to determine competency to stand trial, and so the June 11, 2012 trial setting was vacated. We weigh this six-month delay neutrally because the case was still within the presumptive reasonable time for an intermediately complex case, the case was progressing, and joinder of the two cases caused slight additional pretrial delay. *See Taylor*, 2015-NMCA-012, ¶ 11; *see also Garza*, 2009-NMSC-038, ¶ 27.

**3.      Twenty-Three-Month Delay to Determine Competency to Stand Trial**

{51}    After the June 2012 trial setting was vacated, the issue of Defendant's competency was not resolved until April 1, 2014, when the district court determined Defendant was competent. Trial was then set to commence on August 26, 2014.

{52}    Generally, delays necessary to determine competency are not weighed against the state because "the state cannot try an incompetent defendant." *State v. Stock*, 2006-NMCA-140, ¶ 19, 140 N.M. 676, 147 P.3d 885. If a delay is for the defendant's benefit, it would be unfair to hold it against the state. *Id.*; *see also State v. Mendoza*,

1989-NMSC-032, ¶ 8, 108 N.M. 446, 774 P.2d 440 ("[A] competency examination is clearly on behalf of the accused and in no way infringes on that person's speedy trial rights."). However, the state may share responsibility for the delay if the state does nothing to move the case forward during this period because "[i]t is ultimately the state's duty to make sure that defendants are brought to trial in a timely manner." *Stock*, 2006-NMCA-140, ¶ 25.

{53}    Here, while the issue of Defendant's competency was being determined, the State attempted to move the case forward by filing multiple requests for settings for the competency hearing, as well as requests for expedited hearings on other disputed issues, such as disclosure of testing data, as those issues arose. The State did cause approximately three months of delay by failing to timely provide its experts' evaluation data to Defendant's competency expert. Except for this three-month delay, there is no evidence that the State failed to satisfy its responsibility to keep the case moving forward. Upon review of the facts and circumstances regarding the competency issue delay, we weigh three months of the delay against the State, and the remaining twenty months of delay against Defendant.

## 4.    Four-Month Delay After Competency Issue Resolved Until Trial Commenced

{54}    The State moved for a new trial setting one week after the competency determination. On April 8, 2014, the district court set a new trial date of August 26, 2014, and the parties prepared for trial on that date. Although the case had been pending for some time, given the State's prompt request for a new trial and the court's quick response, we cannot say that the four-month delay was inappropriate. Rather, it is administrative delay, which we weigh lightly against the State.

{55}    Based on the foregoing, of the forty months of total delay, we hold that approximately thirteen months weigh neutrally because the case was progressing normally towards trial. *See Taylor*, 2015-NMCA-012, ¶ 11 (weighing neutrally a delay during which the case was "progressing in a normal fashion"). We hold that the twenty months of delay attributable to the competency issue weighs against Defendant, *see Mendoza*, 1989-NMSC-032, ¶ 8 ("[A] competency examination is clearly on behalf of the accused and in no way infringes on that person's speedy trial rights."), and also hold that the seven months of delay due to the delay in providing expert materials and trial scheduling weighed lightly against the State as administrative delay. *See Garza*, 2009-NMSC-038, ¶¶ 26, 29 (stating that administrative delays are weighed against the state and the degree of weight is closely related to the length of the delay).

## C.    Assertion of the Right

{56}    A defendant does not waive his or her fundamental speedy trial right by failing to assert it. *Gallegos*, 2016-NMCA-076, ¶ 23. "[T]he timeliness and vigor with which the right [to a speedy trial] is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over the defendant's objection or

whether the issue was raised on appeal as an afterthought." *Id.* (alteration, internal quotation marks, and citation omitted). "[P]ro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061.

{57} Defendant raised her right to a speedy trial three times: once in each of her answers to the charges filed on April 13, 2011 and April 19, 2012, and once by her dismissal motion six days before the August 26, 2014 trial. Her first two assertions were part of her initial pleadings in which her counsel entered an appearance, denied the charges, and asked for discovery materials. These assertions were pro forma and are assigned minimal weight. *See State v. Marquez*, 2001-NMCA-062, ¶ 21, 130 N.M. 651, 29 P.3d 1052 (assigning little weight to an assertion in the form of an entry of appearance, request for discovery, and demand for speedy trial).

{58} Defendant did not raise the speedy trial issue again until six days before trial, when she did so in the form of a motion to dismiss on speedy trial grounds. This assertion is sufficient to weigh this factor in Defendant's favor. *See id.* ¶ 22. Because the motion was filed so close to trial, however, we weigh it less in Defendant's favor than had it been filed earlier. *See Gallegos*, 2016-NMCA-076, ¶ 25; *see also State v. Moreno*, 2010-NMCA-044, ¶ 35, 148 N.M. 253, 233 P.3d 782 (concluding that the assertion factor weighed only slightly in the defendant's favor when he asserted his right once pro forma and once in a motion to dismiss two and one-half months before trial).

{59} Defendant's assertions of her right to a speedy trial were neither repeated nor insistent. She made two perfunctory assertions, and a third assertion, on the eve of trial. Moreover, Defendant's competency issue caused much of the delay, which undercuts her assertions of her right. *See State v. Steinmetz*, 2014-NMCA-070, ¶ 62, 327 P.3d 1145 (concluding that the defendant's multiple assertions of his speedy trial right were undermined by "his own delay-causing actions"). We determine that, under the circumstances, Defendant's speedy trial assertions weigh only slightly against the State.

## D.   Prejudice to Defendant

{60} Preventing prejudice to those accused is "[t]he heart of the right to a speedy trial." *Garza*, 2009-NMSC-038, ¶ 12. The speedy trial right is intended "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks and citation omitted). It is the defendant's burden to "make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *State v. Samora*, 2016-NMSC-031, ¶ 21, 387 P.3d 230. Generally, "a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Garza*, 2009-NMSC-038, ¶ 39. "[W]e weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Samora*, 2016-NMSC-031, ¶ 21 (internal quotation marks and citation omitted).

{61}    Defendant was not incarcerated while her case was pending. Although she was subject to conditions of release, she was not subject to "undue and oppressive" pretrial incarceration, which the right to a speedy trial is intended to prevent. *Garza*, 2009-NMSC-038, ¶ 12 (internal quotation marks and citation omitted). Defendant testified that her conditions of release interfered with her ability to find a job and her desire to visit a sick friend who lived out of state. Yet Defendant did not identify any specific job opportunity she lost as a result of those conditions, nor did she provide evidence that she sought or was denied the court's permission to leave the state. Defendant therefore failed to show that she was unduly prejudiced by her conditions of release while her trial was pending.

{62}    Defendant also described the anxiety she suffered pending trial. She testified that she was emotionally stressed and exhausted by the process and that her preexisting mental health issues worsened while awaiting trial. However, Defendant did not introduce any evidence beyond her own assertions establishing that her anxiety was extreme. Without such evidence, we cannot conclude Defendant suffered prejudice due to the delay. *See Gallegos*, 2016-NMCA-076, ¶ 29 (concluding that the defendant did not suffer prejudice based on undue anxiety when his assertions were not explained in detail and were not supported by affidavits, testimony, or documentation).

{63}    Defendant asserts that the pretrial delay caused her to lose touch with her son, Antonio, who may have been a witness in her defense. One risk of excessive delay is that a defendant's defense may be impaired if witnesses disappear and evidence is lost. *Garza*, 2009-NMSC-038, ¶ 36. Defendant is required to show with particularity what the favorable evidence would have been in order to establish prejudice. *See id.* (reasoning that a defendant must "state with particularity what exculpatory testimony would have been offered" to assist with defense (alteration, internal quotation marks, and citation omitted)). Here, Defendant does not describe the testimony Antonio would have given, and she conceded at a pretrial hearing that she was unsure what Antonio might say. It appears that, on the day of the accident, Antonio made statements both that would have supported Defendant's claim that she was not the driver and that would have contradicted her defense. Although Defendant claims prejudice, Antonio's unavailability may have strengthened Defendant's defense because he could have undercut her claim that she was not the driver. We conclude, therefore, that Defendant did not make the required showing of particularized prejudice based on the loss of this witness. *See State v. Deans*, 2019-NMCA-015, ¶ 26, 435 P.3d 1280 (holding that a clarification of law during the pendency of the defendant's trial benefitted the defendant's defense and tempered prejudice from delay).

{64}    Accordingly, we assign no weight to this factor, as Defendant has failed to make a particularized showing of prejudice to demonstrate a violation of any of the three interests.

## E.    Balancing

{65}     "[T]he weighing and balancing of the *Barker* factors is a difficult and sensitive process." *Gallegos*, 2016-NMCA-076, ¶ 32. "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. Even if a defendant cannot make the requisite showing of prejudice, a defendant can show that his or her right to a speedy trial was violated by showing that "the length of the delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted [the] right and not acquiesced to the delay[.]" *Id.* ¶ 39.

{66}     Here, Defendant failed to make a showing of particularized prejudice, but the length of delay, forty months total and twenty-five months past the presumptively prejudicial period, weighs heavily in Defendant's favor. Defendant adequately asserted her speedy trial right. We must, then, determine whether the reasons for delay weigh heavily in favor of Defendant.

{67}     Of the forty months of total delay in this case, we weigh approximately thirteen months neutrally, twenty months against Defendant, and seven months against the State. This was an intermediately complex case, with a presumptively prejudicial period of fifteen months. Therefore, the question becomes whether the State's seven-month administrative delay weighs heavily against it where Defendant made no particularized showing of prejudice.

{68}     We find no authority to support holding that Defendant's speedy trial right was violated without a presumptive showing of particularized prejudice when the State's portion of the delay was administrative and was less than the presumptively prejudicial period. Defendant has not directed us to any and we could not find any New Mexico cases to support such a holding. *Compare Gallegos*, 2016-NMCA-076, ¶ 34 (holding that a fourteen-month and three-week negligent and administrative delay, which exceeded presumptively prejudicial period by a few months, did not support a finding of a speedy trial right violation without a showing of particularized prejudice), *with Taylor*, 2015-NMCA-012, ¶¶ 11-12, 16-17 (concluding that, in a simple case, a nineteen-month administrative/negligent delay weighed heavily against the state and holding that there was a speedy trial right violation even in the absence of particularized showing of prejudice). While we acknowledge the State's obligation to bring Defendant to trial, and that the right to a speedy trial is a fundamental constitutional right, we do not weigh the seven-month administrative delay here heavily against the State. Considering the above factors together, we conclude that the *Barker* factors support the district court's denial of Defendant's motion to dismiss on speedy trial grounds.

**CONCLUSION**

{69}     We affirm Defendant's convictions.

{70}     **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JULIE J. VARGAS, Judge**